**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

GENERAL ACCESS SOLUTIONS, LTD.,

       Plaintiff,

v.

CELLCO PARTNERSHIP D/B/A VERIZON
WIRELESS, VERIZON SERVICES CORP.,
VERIZON BUSINESS GLOBAL LLC,
VERIZON BUSINESS NETWORK SERVICES
LLC, VERIZON CORPORATE SERVICES
GROUP INC., VERIZON DATA SERVICES
LLC, and VERIZON ONLINE LLC,

       Defendants,

ERICSSON, INC.,

       Intervenor-Defendant.

Case No. 2:22-cv-00394 JRG

JURY TRIAL DEMANDED

███████████

**PLAINTIFF'S MOTIONS *IN LIMINE***

# TABLE OF CONTENTS

ARGUMENT .................................................................................................................................... 1

I.    MIL 1:  Evidence, Testimony, or Argument Regarding IPRs, Including that Claims 1
      and 19 Have Been Determined or Admitted to be Known, Conventional, or in the
      Prior Art ................................................................................................................................. 1

      A.    Federal Circuit Precludes the Defendants From Bootstrapping the Surrender
            of Unasserted Claims to Prove the Invalidity of the Asserted Claims ............................ 1

      B.    If Verizon is Allowed to Introduce the Surrender of Unasserted Claims, It
            Will Derail the Trial into a Wasteful Sideshow ................................................................ 2

      C.    Defendants' Evidence Would Also Violate Verizon's *Sotera* Stipulation ....................... 4

      D.    The Jury May Be Properly Instructed on Damages Without Injecting the
            Invalidity of Unasserted Claims ....................................................................................... 6

II.   MIL 2: Evidence, Testimony, or Argument That General Access, Raze, or their
      Principals ████████████████████████████████
      ████████ ........................................................................................................................ 7

III.  MIL 3: Evidence, Testimony, or Argument of Irrelevant and Unfairly Prejudicial
      Information Regarding the Value of General Access's Intellectual Property .......................... 10

IV.   MIL 4: Evidence, Testimony, or Argument That the ████████████████████
      ████████████████████████████████ ............................................................... 12

V.    MIL 5: Evidence, Testimony, or Argument of Irrelevant, Confusing, and Unfairly
      Prejudicial Information Regarding the Prosecution of the '931 Patent ................................... 13

CONCLUSION .............................................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Alacritech Inc. v. CenturyLink, Inc.*,
No. 216-cv-00693, 2023 WL 6553832 (E.D. Tex. Oct. 8, 2023) ......................................10

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
598 F.3d 1336 (Fed. Cir. 2010) ..........................................................................................13

*AstraZeneca AB v. Apotex Corp.*,
782 F.3d 1324 (Fed. Cir. 2015) ....................................................................................... 6, 7

*Douglas Dynamics, LLC v. Buyers Prod. Co.*,
No. 09-cv-261-WMC, 2014 WL 988755 (W.D. Wis. Mar. 13, 2014) ....................................2

*Dow Chem. Co. v. Mee Indus., Inc.*,
341 F.3d 1370 (Fed. Cir. 2003) ............................................................................................2

*Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp., LLC*,
879 F.3d 1332 (Fed. Cir. 2018) ............................................................................................6

*Geodynamics, Inc. v. Dynaenergetics*,
No. 2:17-cv-00371, 2018 U.S. Dist. LEXIS 185836  (E.D. Tex. Sept. 21, 2018) ..............14

*GREE, Inc. v. Supercell Oy*,
No. 2:19-cv-00070, 2020 WL 4288356 (E.D. Tex. July 27, 2020) ......................................13

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*,
No. 2:13-cv-213, 2015 U.S. Dist. LEXIS 20306 (E.D. Tex. Jan. 30, 2015).......................10

*Sprint Spectrum L.P. v. Gen. Access Sols., Ltd.*,
812 F. App'x 999 (Fed. Cir. 2020) .......................................................................................3

*Sprint Spectrum L.P. v. Gen. Access Sols., Ltd.*,
No. IPR2017-01889, 2019 WL 1096544 (P.T.A.B. Mar. 7, 2019) .......................................2

*Team Worldwide Corp. v. Acad., Ltd.*,
No. 2:19-cv-00092, 2021 WL 8441754 (E.D. Tex. June 4, 2021) ......................................13

*Walden v. Affiliated Computer Services*, Inc.,
97 S.W.3d 303 (Tex. App. 2003) ..........................................................................................9

*Weatherford Tech. Holdings, LLC v. Tesco Corp.*,
No. 2:17-cv-00456-JRG, 2018 WL 4620636 (E.D. Tex. May 22, 2018) ...........................14

*Yu v. Lu*,
No. 03- 22-00036-CV, 2022 WL 2056362 (Tex. App. June 8, 2022) ...................................9

**Statutes**

35 U.S.C. § 282 (2000)...........................................................................................................2

**Rules**

Fed. R. Evid. 403 ...............................................................................................................10

Fed. R. Evid. 404 ...............................................................................................................10

General Access Solutions, Ltd. ("General Access") respectfully files the following opposed motions *in limine* Nos. 1-5, regarding "issues that if improperly introduced at trial would be so prejudicial that the Court could not alleviate the prejudice by giving appropriate instructions to the jury." Dkt. 192 at 3 (Docket Control Order).

## ARGUMENT

I. **MIL 1: Evidence, Testimony, or Argument Regarding IPRs, Including that Claims 1 and 19 Have Been Determined or Admitted to be Known, Conventional, or in the Prior Art**

Claims 1 and 19 of the '931 Patent are not asserted in this case. Nevertheless, Defendants are making a full court press to introduce evidence that those claims were surrendered years ago in the prior Sprint IPR. The Defendants seek to inject General Access's surrender of Claims 1 and 19 into the case to set up an improper shortcut to meet the demanding burden they face in proving their obviousness defense under § 103. Instead of proving that the elements of asserted Claims 28 and 29 are actually disclosed in the prior art references they have chosen to assert in this case, Defendants instead seek to have the jury take as a given that all the elements in Claims 1 and 19 are in the prior art (and indeed that they were well-known and conventional) and have the jury focus solely on the additional elements added by Claims 28 and 29. The Court should not allow Defendants to do this for several reasons.

A. **Federal Circuit Precludes the Defendants From Bootstrapping the Surrender of Unasserted Claims to Prove the Invalidity of the Asserted Claims**

Defendants seek to tell the jury at every opportunity that Claims 1 and 19 have been found invalid, and to argue, based on that fact, that all the jury must do is consider the additional elements added by claims 28 and 29. But Claims 1 and 19 are not asserted in this case. The validity of those claims has zero bearing on the Defendants' infringement of the Asserted Claims 28 and 29. Nor does it have any bearing on the validity of the Asserted Claims. Defendants' clear purpose in introducing this evidence is to incorrectly suggest to the jury that previous determinations from IPRs

1

should inform the jury's assessment of the validity of the asserted claims. But Federal Circuit law precludes Defendants from bootstrapping their invalidity arguments at trial in this manner. The Federal Circuit has "repeatedly emphasized" that "'each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims; [and] dependent or multiple dependent claims shall be presumed valid even though dependent upon an invalid claim.'" *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1375 (Fed. Cir. 2003) (quoting 35 U.S.C. § 282 (2000)). "Every claim, even a claim in dependent form, is presumed valid independently of the validity of other claims." *Douglas Dynamics, LLC v. Buyers Prod. Co.*, No. 09-CV-261-WMC, 2014 WL 988755, at *5 (W.D. Wis. Mar. 13, 2014).

Furthermore, as discussed in General Access's Response to Defendants' Motion for Summary Judgment of Judicial Estoppel and Collateral Estoppel, the prior Sprint IPR was decided under a different claim construction standard and different claim constructions. *See* Dkt. 153. And because General Access surrendered Claims 1 and 19, the validity of those claims was not actually litigated. So collateral estoppel does not apply.

## B.    If Verizon is Allowed to Introduce the Surrender of Unasserted Claims, It Will Derail the Trial into a Wasteful Sideshow

If Verizon is allowed to open this Pandora's box, General Access will have to respond by providing the jury with important context needed to understand the situation, including the different standards applicable to the Sprint IPR and the fact that the Federal Circuit *affirmed* the validity of Claims 28 and 29 on appeal, despite the invalidation of the Claims 1 and 19.

To understand this dispute, one must understand the context of the Sprint IPR. In that proceeding, Sprint sought to invalidate all the claims of the '931 Patent, using as its primary reference an obscure paper authored by Ulrich Vornefeld. In that IPR, General Access surrendered independent Claims 1 and 19, but the Board rejected Sprint's challenges to the validity of Claims 28 and 29. Final Written Decision, *Sprint Spectrum L.P. v. Gen. Access Sols., Ltd.*, No. IPR2017-01889,

2

2019 WL 1096544 at *3, 10 (P.T.A.B. Mar. 7, 2019) (quoting General Access's former counsel as admitting that "[Vornefeld] knocks out our independent claims"). On appeal, the Federal Circuit affirmed the validity of Claims 28 and 29, and in so doing rejected Sprint's argument that Vornefeld rendered them unpatentable either on its own or in combination with other references. *Sprint Spectrum L.P. v. Gen. Access Sols., Ltd.*, 812 F. App'x 999, 1007 (Fed. Cir. 2020).

Against this backdrop, Defendants' evidence should be excluded because injecting these issues into the case will fundamentally derail the trial. If Defendants are allowed to open this door, General Access would need to provide facts necessary for the jury to fully understand the issue. This would include, first and foremost, the fact that in that same Sprint IPR, Claims 28 and 29 were to be found valid over Vornefeld and all other asserted prior art. It would also include that: (1) the prior IPR proceedings on the '931 Patent and the PTAB's determination was made under the pre-AIA "broadest reasonable construction" claim construction standard, and (2) the primary reference in the prior IPR (Vornefeld) is not asserted or at issue in this case.

And that is not even the trickiest terrain the jury would need to navigate. A key piece of Verizon's invalidity defense is that, according to Dr. Andrews, a reference called Foreseen teaches a "sector deployment strategy." Ex. 1, Andrews Rept. ¶ 273. Because of this and similar opinions Dr. Andrews offers, the meaning of the claim term "sector" plays a critical role in Verizon's invalidity defense. Crucially, however, the Court in this case issued a new construction of "sector" that was not in play in the Sprint IPR, and that fundamentally changes the analysis with respect to Vornefeld. As General Access has explained in many filings, Vornefeld plainly does not disclose the elements of Claims 1 and 19 under the Court's new construction. Thus, if Verizon is allowed to tell the jury that Claims 1 and 19 were surrendered in a prior proceeding, the jury would need to be educated on this material change in a pivotal claim construction. Otherwise, the jury will be left with the

3

misimpression that the proceeding in which Claims 1 and 19 were surrendered already considered the "sectors" issue, and that General Access made its surrender against that backdrop. It did not.

### C.    Defendants' Evidence Would Also Violate Verizon's *Sotera* Stipulation

Exclusion is also necessary to hold Verizon to the commitment it made in its own IPR against the '931 patent. In filing IPR2023-00978, Verizon filed a *Sotera* stipulation in which it committed not to "pursue in this litigation the grounds raised in that petition for IPR" (which include Vornefeld).[1] It appears, however, that Defendants are going to try to circumvent their inability to rely on Vornefeld by treating Claims 1 and 19—which General Access surrendered in a previous IPR solely on the basis of Vornefeld[2]—as if they are prior art to Claims 28 and 29. Specifically, Defendants have suggested they intend to argue to the jury that, because Claims 1 and 19 have been deemed invalid, the jury should focus its validity analysis only on whether the additional elements disclosed in Claims 28 and 29 would have been obvious to a POSITA.

Defendants have acknowledged that at least fourteen paragraphs of Dr. Andrews' report[3] "simply recognize the various elements of the asserted claims that have been adjudicated to be disclosed by the prior art." D.I. 149 at 3. "[T]he prior art" that Dr. Andrews references is Vornefeld, which is not asserted in this case. Defendants should not be permitted to make this statement to the jury, whether through Dr. Andrews (as addressed in General Access's pending motion to strike, *see*

---

[1] *Petition for Inter Partes Review*, Cellco Partnership d/b/a Verizon Wireless v. General Access Solutions, Ltd., IPR2023-00978, Paper 1 (PTAB May 26, 2023) (petition); *id.* Ex. 1020 (PTAB Oct. 30, 2023) (*Sotera* stipulation).

[2] For the reasons explained in General Access's response to Defendants' Motion for Summary Judgment, General Access's surrender of Claims 1 and 19 in the prior IPR does not result in any estoppel or preclusion regarding General Access's arguments here that Claims 28 and 29 are valid. *See* D.I. 153.

[3] General Access has separately moved to strike these paragraphs of Dr. Andrews' report, among others. *See* D.I. 128.

D.I. 128) or by (for example, and as addressed in this motion *in limine*) attempting to cross examine General Access's witnesses about prior IPR proceedings or any "admissions" made by General Access in those proceedings.

Because General Access surrendered Claims 1 and 19 solely on the basis of Vornefeld, permitting Defendants to argue in the context of their invalidity case that the elements of Claims 1 and 19 have already been found to be invalid (or that elements of these claims are "known in the art" or "conventional," etc.) is necessarily an improper reliance on Vornefeld, which Defendants do not and cannot assert as an invalidity reference in this case. Telling the jury that Claims 1 and 19 were in the prior art would interfere with the jury's evaluation of the correct inquiry, which is whether a person of ordinary skill would have been motivated to combine the Navini Ripwave System with Forssén or Toshimitsu, and whether the resulting combination would render obvious each and every element of Claims 28 and 29 (including the elements recited in Claims 1 and 19).

Defendants are of course free to argue that the prior art asserted in this case (the Navini Ripwave System, Forssén, and Toshimitsu) discloses the elements of the asserted claims, but any suggestion that any claim element has already been determined to be "known in the art" or "conventional" is an improper reference to prior IPR proceedings and an improper reliance on Vornefeld. Defendants' experts in this case do not offer *any opinions* about whether Vornefeld anticipates or renders obvious any element of any claim. Defendants must prove the invalidity of Claims 28 and 29 independently from any prior determination of invalidity as to Claims 1 and 19. In other words, Defendants must establish that all of the elements of Claims 28 and 29—including those set forth in Claims 1 and 19—were in the prior art or were obvious to a person of ordinary skill in the art. Defendants must make this showing on the basis of the prior art disclosed in

Defendants' expert report, specifically the Navini Ripwave System, Forssén, and Toshimitsu.[4] *See* Ex. 1, Andrews Invalidity Report, ¶ 164.

### D. The Jury May Be Properly Instructed on Damages Without Injecting the Invalidity of Unasserted Claims

Separate from the question of whether Claims 28 and 29 are valid, Defendants also suggest they should be allowed to parade the surrender of Claims 1 and 19 as part of their response to General Access's damages case. For example, Dr. Andrews dedicates an entire section of his rebuttal report (which General Access has moved to strike) to evaluating "what utility and advantages, if any, Claims 28 and 29 have over and in combination with conventional Claims 1 and 19." Ex. 2, Andrews Rebuttal Report at ¶ 154; *see generally id.* ¶¶ 153–189. Unsurprisingly, Dr. Andrews concludes that "[t]o the extent that there is any technical benefit at all [to Claims 28 and 29], it is in my opinion significantly less than 1% over 'old modes' and benefits provided by Claims 1 and 19." *Id.* ¶ 188. Dr. Madisetti rebuts this assertion and explains that his apportionment analysis, on which Dr. Kennedy relies, "isolate[s] the value of the Asserted Claims [28 and 29] of the '931 patent above and beyond all prior art or previously known technology." Ex. 3, Madisetti Rept. at ¶ 300.

The principles of apportionment require only that the value of the "conventional" elements of the asserted claims be apportioned out. *See AstraZeneca AB v. Apotex Corp.*, 782 F.3d 1324, 1339 (Fed. Cir. 2015) (plaintiff must show "how much new value is created by the novel combination, beyond the value conferred by the conventional elements alone"); *see also Exmark Mfg. Co. Inc. v. Briggs & Stratton Power Prod. Grp.*, LLC, 879 F.3d 1332, 1348 (Fed. Cir. 2018) (applying *AstraZeneca*). This principle is entirely consistent with Dr. Madisetti's analysis. There is no support for

---

[4] Dr. Andrews also asserted that certain claim elements would have been obvious "in view of the knowledge of a POSITA," but did not identify Vornefeld as a relevant component of that knowledge. Ex. 1, ¶ 164; *see generally id.* ¶¶ 166–326 (obviousness analysis, not citing Vornefeld). Dr. Andrews also briefly addressed Vornefeld, and the PTAB's previous analysis of it, in the context of § 112. *Id.* ¶¶ 362, 366.

Defendants' apparent position that a plaintiff must apportion out every claim element that happens to be included in any printed publication that is prior art under § 102, no matter how obscure. Indeed, such a regime would be utterly unworkable, requiring experts to analyze the entire body of § 102 prior art and apportion out every claim element appearing in every § 102 reference. Such a requirement was squarely rejected in *AstraZeneca*, which recognized that novel combinations of previously known elements can have significant value. *See AstraZeneca*, 782 F.3d at 1338–39 ("it has long been recognized that a patent that combines old elements may give the entire value to the combination if the combination itself constitutes a completely new and marketable article") (cleaned up).

As with validity, there is no reason to mention IPRs in order to instruct the jury about apportionment principles, or about damages more generally. Despite half a dozen pleadings on this issue, Verizon has never articulated a persuasive reason why the jury cannot be properly instructed about damages, including apportionment, without being told that the independent claims are invalid. That is because there is none. The jury can be properly instructed without opening the pandora's box that is the surrender of Claims 1 and 19.

## II.    MIL 2: Evidence, Testimony, or Argument That General Access, Raze, or their Principals ████████████████████████████████████████████████████████

As demonstrated in the deposition of General Access's principal, Mr. Michael "Skip" Hynek, Defendants intend to unfairly and prejudicially █████████████████████████████████████████ █████████████████████████████████████████████████████████████████ ████████████████████████████ Defendants plan to offer four categories of evidence as part of this character assassination:

**Delayed Repayment of Promissory Note:**  Defendants plan to offer evidence at trial that a ██████████████████████████████ used as part of the consideration for General Access's 2002

purchase of intellectual property and other assets of a predecessor-in-interest known as Raze Technologies, ██████████████████████████████████████████████████████████ ███████████████████████████. Ex. 4, Hynek 2024 Dep. 21:6-23:25, 62:23-63:2, 48:1-4, 89:5-10.

**Mistreatment of Raze Employee:** Defendants plan to offer evidence at trial that when General Access acquired Raze's assets ████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████ *Id.* at 36:2-4, 41:7-10, 41:14-15, 50:17-51:19. In support of this, Defendants also intend to offer evidence that ██████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ *Id.* at 82:22-84:14, 85:21-86:23, 87:10-88:7, 89:16-90:11.

**Billing Dispute with Prosecution Counsel:** Defendants plan to offer evidence that Munck Carter, a law firm that prosecuted the patents in suit, █████████████████████████████████ █████████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████ *Id.* at 179:16-180:3. *See also* Ex. 5 Hynek 2011 Dep. at 27:12-23, 32:14-17, 32:23-33:3, 33:18-35:3, 256:8-18.

**Alleged Failure to Reimburse a Broker's Costs:** Defendants plan to offer evidence that a patent brokerage firm known as RSL Holdings ("RSL"), which was engaged by General Access many years ago to explore a possible a possible sale of the General, ████████████████████████ █████████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████ *Id.* at 133:3-133:12, 129:10-130:2 130:13-130:19, 131:3-131:24.

Verizon's smear campaign, if permitted, would be highly prejudicial and would cause the trial to devolve into a series of confusing sideshows. General Access of course has strong responses to all of this evidence, but responding to these prejudicial attacks would take significant time that should be devoted instead to the issues in the case.

Tellingly, at the parties' meet and confer on this motion, Defendants were unwilling (or unable) to articulate any theory of relevance for any of this evidence. However, their prior arguments offer some clues about their theories. For example, in its now-moot motion to compel, ███████ ████████████████████████████████████████████████████████████████ *See* Dkt. 99 at 8. Not so. As General Access explained in its opposition to that motion, ██████████████ ███████████████████████████████████████████████████████████████████ Dkt. 114 at 6-7. It is well-settled that an assumption of liabilities constitutes valid consideration. *See Walden v. Affiliated Computer Services*, Inc., 97 S.W.3d 303, 316 (Tex. App. 2003). Thus, there was adequate consideration even if General Access never repaid the promissory note (which it ultimately did, with interest). *See* Ex. 6, GA0264713. In any event, under Texas law, which governs the asset purchase agreement, "non-payment does not render [an] agreement invalid." *Yu v. Lu*, No. 03- 22-00036-CV, 2022 WL 2056362, at *4 (Tex. App. June 8, 2022) (explaining the well-recognized distinction between failure of consideration and lack of consideration).

Likewise, there is no relevance to Raze's employment-related liabilities and disputes. Verizon's own damages expert admitted that General Access's ██████████████████████████████ ██████ has no bearing on his analysis. Ex. 7, Bakewell Dep. 82:21-83:10. ████████████ █████████████████████████████████████████████ is beyond the pale. Nothing about those unrelated cases—████████████████████████████████████████████ ████████████████████████████████████████████████████████████—

is germane to the issues in this case. That evidence and the necessary rebuttal would create a prejudicial and confusing waste of time. *See* Fed. R. Evid. 403, 404.



—that "fact" serves only to disparage Mr. Hynek and should be excluded. *See Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.,* No. 2:13-cv-213, 2015 U.S. Dist. LEXIS 20306, at *9-10 (E.D. Tex. Jan. 30, 2015) (excluding "improper character evidence relating to the indirect owners of Rembrandt," the plaintiff).

has no probative value and is nothing more than an unfairly prejudicial attack on Mr. Hynek's character, which would invite

### III.    MIL 3: Evidence, Testimony, or Argument of Irrelevant and Unfairly Prejudicial Information Regarding the Value of General Access's Intellectual Property

Defendants may also seek to elicit testimony about, or otherwise introduce evidence of, certain unfairly prejudicial information purportedly related to the value of General Access's intellectual property. This evidence should also be excluded.

*First*, Verizon has suggested that it intends to introduce evidence of certain 2001 and 2006 re-organization transactions, through which General Access acquired the patents in suit (along with the rest of the General Access patent portfolio) from its predecessor entities, as relevant to damages. *See* Dkt. 99 at 7. But as General Access has previously explained, that argument is wrong. Dkt. 114 at 5-6. The '931 Patent did not issue until July 2007, and the '794 did not issue until August 2016. The amount of consideration paid in connection with reorganizational transactions that pre-dated the issuance of the patents in suit has no probative value in determining the amount of a reasonable royalty for Verizon's infringement of the patents. *Alacritech Inc. v. CenturyLink, Inc.,* No. 216-cv-00693, 2023

WL 6553832, at *10 (E.D. Tex. Oct. 8, 2023) (Precluding an expert witness from relying on valuations that pre-dated the issuance of the asserted patents "because any marginal relevance is substantially outweighed by the danger of unfair prejudice and misleading the jury."). Indeed, Verizon has made no showing that the transactions at issue involved any assessment of the value of the relevant technology, or any other information relevant to the *Georgia-Pacific* factors. To the contrary, Verizon's own damages expert admitted under oath that these transactions have no direct bearing on his *Georgia-Pacific* analysis. Ex. 7, Bakewell Dep. 80:5-81:11.

*Second*, Verizon intends to introduce evidence of certain statements made by a man named Mr. Frank Maggio regarding possible sales prices for the General Access patent portfolio. Specifically, Mr. Maggio advised Mr. Hynek that ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████ Ex. 9, VGASMAG0000548. These statements should be excluded because they have no probative value and would be confusing, unfairly prejudicial, and waste time at trial—not to mention that they are hearsay.

Mr. Maggio was never engaged by General Access; he was simply a middleman who attempted to connect Mr. Hynek to ICAP, a brokerage firm, in the hopes of earning a referral fee if ICAP brokered a sale of the patents. *See* Ex. 10, Maggio Dep. 49:7-23, 52:3-53:4; Ex. 11, Hynek 2020 Dep. 105:20-108:12. Mr. Maggio's comments were not informed by any analysis of the asserted patents or even of the portfolio in general. Because Mr. Maggio performed no analysis and expressly spoke in general about the typical sales prices for patents generally, his statements have no probative value whatsoever. Moreover, neither General Access nor Mr. Hynek ever agreed to sell the patent portfolio

for such prices.[5] We should not be wasting the precious time of the Court and jury with sideshows about the uninformed hearsay opinions of a middleman—none of which involved any assessment of the value of the patents-in-suit—who was merely introducing Mr. Hynek to a patent broker.

IV.    **MIL 4: Evidence, Testimony, or Argument That the ███████████████████████████ ███████████████████████████**

Defendants contend that a software feature called ██████████████ is a non-infringing alternative to the asserted claims of the '931 Patent. Ex. 1, Andrews Rept. ¶ 506. As of the close of fact and expert discovery—and to this very day—████████████████████████████████ █████████████████████████████████ *See* Ex. 12, Faxer Mar. 2024 Dep. at 35:11-36:2. In fact, ███████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████ Ex. 13, Dong Dep. 78:6-17. However, Defendants have indicated that ███████████████████████████████████████████ and then tell the jury about it.[6]

Having deprived General Access with the ability to obtain any discovery regarding this potentially changed reality, the Court should not allow Defendants to offer such evidence at trial.

As of the filing of this motion, ████████████████████████████████████

████████████████████████████████ As a result, General Access has never had the opportunity to obtain discovery about how the feature performs in Verizon's network. For example, General Access has not been able to take discovery on how the feature impacts throughput, capacity, speed, or reliability in Verizon's 5G network. General Access also has not been able to take

---

[5] Mr. Hynek testified in no uncertain terms that he never discussed an acceptable sales price for the General Access portfolio with Mr. Maggio. Ex. 11, Hynek 2020 Dep. 106:4-16. Mr. Maggio did not recall whether those prices came from him or from Mr. Hynek. Ex. 10, Maggio Dep. 36:6-22.

[6] Any evidence that the ███████████████████████████████████████████ would be outside the Defendants' expert reports (and would thus violate the Court's Standing MIL No. 23) because they have stated only that ███████████████████████████, but Defendants may attempt to do so with or more fact witnesses at trial.

discovery on the extent to which the feature is used, and whether it is limited to certain narrow deployment scenarios. Therefore, as a matter of fairness and basic discovery rules, Verizon should not be able to ambush General Access at trial with entirely new information about ██████████ ████████████████████████████████████████████████████████████████████ *See GREE, Inc. v. Supercell Oy*, No. 2:19-cv-00070, 2020 WL 4288356, at *3 (E.D. Tex. July 27, 2020) (striking information regarding implementation of NIAs that was not disclosed during fact discovery).

## V. MIL 5: Evidence, Testimony, or Argument of Irrelevant, Confusing, and Unfairly Prejudicial Information Regarding the Prosecution of the '931 Patent

It is axiomatic that assessing the adequacy of the written description in a patent "requires an objective inquiry into the four corners of the specification from the perspective of a person of ordinary skill in the art." *Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1351 (Fed. Cir. 2010); *Team Worldwide Corp. v. Acad., Ltd.*, No. 2:19-cv-00092, 2021 WL 8441754, at *2 (E.D. Tex. June 4, 2021). Nevertheless, Defendants intend to argue to the jury, in support of their argument that claims 28 and 29 of the '931 Patent lack adequate written description, that General Access's prosecution attorneys added those claims late in the prosecution in response to an office action without authorization or input from the client, relying on pleadings and statements made in a lawsuit between General Access and its prosecution counsel. *See, e.g.*, Ex. 4, Hynek 2024 Dep. 182:21-188:20, 189:17-190:15, 198:7-198:25, 199:20-203:7, 206:14-211:7, 212:24-216:21, 229:11-25; Ex. 14, Venglarik Dep. 69:14-70:16, 71:9-25, 72:6-21.[7] The Court should not permit Defendants to embark on this irrelevant, confusing, and unfairly prejudicial odyssey.

---

[7] Defendants intend to develop this theory not only with Mr. Hynek, but also with deposition testimony of Mr. Daniel Venglarik, one of the Munck Carter prosecution attorneys that represented General Access. To the extent ████████████████████████████████████████████████████████ ██████████████████████████████████ or materials about the litigation between General Access and Munk Carter, that evidence is barred by the Court's Standing *Limine* Order. Standing MIL Order Nos. 13, 22.

Evidence about how the innerworkings of Munck Carter's prosecution is irrelevant to the validity of the '931 Patent. Instead, whether the '931 Patent is supported by adequate written description turns on an objective analysis of the specification (including the materials it incorporates by reference) and how a person of ordinary skill in the art would understand those disclosures. *See Geodynamics, Inc. v. Dynaenergetics*, No. 2:17-cv-00371, 2018 U.S. Dist. LEXIS 185836, at *4-5 (E.D. Tex. Sept. 21, 2018) (excluding evidence about "conflict[s] between prosecution histories and the IPR proceedings" as irrelevant to "the written-description inquiry"); *see also Weatherford Tech. Holdings, LLC v. Tesco Corp.*, No. 2:17-cv-00456-JRG, 2018 WL 4620636, at *4 (E.D. Tex. May 22, 2018) (noting that "patent prosecuting attorneys are rarely called to trial especially in a case such as this where there is no claim of inequitable conduct"); *see also* Dkt. 151, 177 (citing and discussing evidence demonstrating that the '931 patent has adequate written description).

Defendants' narrative regarding the addition of claims 28 and 29 by the prosecution attorneys will require the jury to parse billing records and the prosecution history, and the privileged interactions between General Access and its prosecution counsel. *See, e.g.*, Ex. 4, Hynek 2024 Dep. 182:21-188:20, 189:17-190:15, 198:7-198:25, 199:20-203:7, 206:14-211:7, 212:24-216:21, 229:11-25; Ex. 14, Venglarik Dep. 69:14-70:16, 71:9-25, 72:6-21. To show that nothing nefarious occurred, General Access would be forced to offer evidence the typical relationship between an inventor and patent prosecution firm, and to potentially into privileged attorney-client communications. The probative value of Defendants' evidence, if any, would be substantially outweighed by the risk of confusion, delay, and unfair prejudice.[8]

---

[8] The sideshow this evidence will create can be seen by the fact that it took counsel for Ericsson a full 85 pages of transcript to develop this argument in Mr. Hynek's deposition. As usual, responding will be even more time consuming. *See* Ex. 4, Hynek 2024 Dep. 164:2-249:23.

The evidence's lack of probative value is demonstrated by the fact that the materials Defendants plan to introduce to support this narrative is neither cited nor discussed in the parties' expert reports on validity. For example, Defendants' validity expert, Dr. Andrews, nowhere discusses the innerworkings of how Munck Carter prosecuted the patents on behalf of General Access. It is telling that even Defendants' own validity expert was unwilling to wade into this thicket in articulating his written description opinions. The Defendants' arguments about the prosecution history have no place in a written description inquiry.

## CONCLUSION

For the foregoing reasons, General Access respectfully requests that the Court grant its motions *in limine*.

Dated: April 29, 2024

Respectfully submitted,

*/s/ Glen E. Summers*

Glen E. Summers (CO Bar No. 30635)
LEAD ATTORNEY
Nosson D. Knobloch (CO Bar No. 42134)
Giovanni J. Sanchez (CO Bar No. 59696)
Taylor Kelson (CO Bar No. 56910)
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com
nosson.knobloch@bartlitbeck.com
giovanni.sanchez@bartlitbeck.com
taylor.kelson@bartlitbeck.com

Michael J. Valaik (IL Bar No. 6276086)
**BARTLIT BECK LLP**
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
michael.valaik@bartlitbeck.com

T. John Ward (TX Bar No. 00794818)
Charles Everingham IV (TX Bar No. 00794818)
Andrea L. Fair (TX Bar No. 24078488)
**WARD SMITH & HILL, PLLC**
1507 Bill Owens Pkwy.
Longview, Texas 75604
Telephone: (903) 757-6400
jw@wsfirm.com
ce@wsfirm.com
andrea@wsfirm.com

*Attorneys for Plaintiff General Access Solutions, Ltd.*

16

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on April 15, 2024, which will send a notification of such filing to all counsel of record.

/s/ Glen E. Summers
Glen E. Summers

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the protective order in the above-captioned cases, this motion contains confidential information. Accordingly, this document is to be filed under seal.

/s/ Glen E. Summers
Glen E. Summers

## CERTIFICATE OF CONFERENCE

The undersigned certifies that counsel has complied with the meet and confer requirement via telephonic conference, and motions *in limine* 1-5 are opposed.

/s/ Glen E. Summers
Glen E. Summers

17