# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON SERVICES CORP., VERIZON BUSINESS GLOBAL LLC, VERIZON BUSINESS NETWORK SERVICES LLC, VERIZON CORPORATE SERVICES GROUP INC., VERIZON DATA SERVICES LLC, and VERIZON ONLINE LLC, <br><br> Defendants, <br><br> ERICSSON, INC., <br><br> Intervenor-Defendant. | Case No. 2:22-cv-00394 JRG <br><br> JURY TRIAL DEMANDED |

**PLAINTIFF'S SUR-REPLY TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT OF INVALIDITY OF U.S. PATENT NO. 7,230,931 FOR LACK OF WRITTEN DESCRIPTION**

**TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 1

I.      The '931 Patent Describes Sending Beams to Multiple Sectors in the Same TDD Frame ............................................................................................................................ 1

II.     Dr. Madisetti Offered Detailed Expert Opinions About Written Description ............ 2

III.    Verizon's Disclaimer Argument Re-Writes the Federal Circuit's Sprint Decision ..... 4

IV.    Verizon Quotes Its Own Lawyer, Not the Named Inventor ........................................ 5

# TABLE OF AUTHORITIES

**Cases**

*Blue Calypso, LLC v. Groupon, Inc.*,
815 F.3d 1331 (Fed. Cir. 2016) ................................................................................................3

*ScriptPro, LLC v. Innovation Assocs., Inc.*,
762 F.3d 1355 (Fed. Cir. 2014) ................................................................................................3

*Xitronix Corp. v. KLA-Tencor Corp.*,
No. A-08-CA-723, 2010 WL 11507169 (W.D. Tex. Oct. 27, 2010) .........................................4

## INTRODUCTION

The specification of the '931 Patent contains adequate written description to support the Asserted Claims.

To try and salvage its motion, Verizon offers a series of mistruths. First, it contends that General Access's analysis of the specification is pure attorney argument. But the specification of the patent is evidence—indeed, it is the critical evidence with respect to written description. In any event, Dr. Madisetti offered pages of detailed written description analysis in his report, including for points General Access made in its response. Verizon's argument also proves too much. Verizon did not cite its own technical expert even once in its opening motion. Applying Verizon's own logic, its motion lacks admissible evidence and should be denied.

Next, Verizon re-writes the Federal Circuit's *Sprint* decision, claiming that the Federal Circuit addressed "synchronous" transmissions. But the word "synchronous" appears nowhere in the *Sprint* decision, nor in the statements Verizon points to in an attempt to show disclaimer. Thus, Verizon falls woefully short of the "clear and unmistakable" showing it must make to establish disclaimer.

Finally, Verizon repeatedly quotes Mr. Rosenthal, its own lawyer, and represents that his questions are the named-inventor's testimony. The only actual inventor testimony that Verizon cites are, by Verizon's own description, "contrary" to its theory. This confirms that a reasonable factfinder should—and certainly could—read the inventor's testimony differently. Thus, each of Verizon's attempts to save its motion should be rejected and summary judgment should be denied.

## ARGUMENT

I. **The '931 Patent Describes Sending Beams to Multiple Sectors in the Same TDD Frame**

In its opening brief, Verizon proclaimed—as its lead argument—that the '931 Patent "never mentions sending two beams to two different sectors." Dkt. 127 at 10; *see also id.* at 9-10. In reply, Verizon abandons that meritless notion. Unsurprising. As General Access showed, the specification

1

repeatedly discusses transmitting directed scanning beams to users located in multiple sectors. *See* Dkt. 151 at 3-6. Tellingly, Verizon has yet to explain how the patent's copious discussion of avoiding interference between sectors can be squared with its (now abandoned) argument that all beams are transmitted in a single sector. Nor could it. Verizon's own technical expert conceded that "the '931 does describe[] transmitting different directed scanning beams to wireless access devices in different sectors . . . ." Ex. 9, Andrews Rept. ¶ 363.

Verizon instead retreats to its argument that, even if the patent describes sending beams to different sectors, those transmissions are not in the same TDD frame. Wrong. As Verizon conceded, the patent discloses a beam-forming network that can create "two or more independent beams" and that "more than one beam may be used in each TDD frame." Dkt. 127 at 10. As General Access noted in response, Verizon did not identify anything in those disclosures that suggest that the network transmits all those beams into the same sector. Dkt. 151 at 10. In reply, Verizon has no answer whatsoever. Drawing all reasonable inferences in plaintiff's favor, as the Court must at this stage, the "two or more independent beams" which occur in a single TDD frame, must be understood to include beams transmitted to users in multiple sectors. This unrebutted point is reason enough to deny Verizon's motion. *See* Ex. 10, Madisetti Rebuttal Rept. ¶ 400-01.

## II.    Dr. Madisetti Offered Detailed Expert Opinions About Written Description

Rather than rebut those and the many other points General Access made, Verizon points to a red herring: It contends that summary judgment should be granted because General Access cited its expert only twice. This absurd argument fails for at least three reasons. First, Verizon itself offered nothing but attorney argument to support its motion: **Verizon did not cite Dr. Andrews' report even a single time in its opening brief**. Thus, by its own logic, Verizon's motion should be denied because it—the party with the burden of proof—did not support its arguments with any citations to its expert's opinions.

Second, Dr. Madisetti offered a lengthy, detailed, and sworn expert opinion that the patent has adequate written description, including analysis relevant to the points General Access made in its response, as shown in the table below. *See, e.g.*, Ex. 10, Madisetti Rebuttal Rept. ¶¶ 365-407.

| Plaintiff's Response | Dr. Madisetti's Opinions |
|---|---|
| The specification has ample written description for transmissions to multiple sectors, including discussion of preventing inter-sector interference. Dkt. 151 at 3-4. | Ex. 10, at ¶¶ 371, 373, 374, 377, 387, 395, 399, 400, 401, 402, 403; *see also* Ex. 11 at ¶¶ 141, 254, 347. |
| The specification's description of RF modems provides written description support. Dkt. 151 at 5. | Ex. 10 at ¶ 374; Ex. 11 at ¶ 357. |
| The patent provides written description support for transmitting to multiple sectors in a single TDD frame. Dkt. 151 at 5-7. | Ex. 10 at ¶¶ 395-407. |
| The specification discloses a base station-controlled TDD frame. Dkt. 151 at 9-10. | Ex. 10 at ¶ 405. |
| The specification distinguishes the invention from prior art which failed to teach inter-sector coordination. Dkt. 151 at 9-10. | Ex. 10 at ¶ 382, 383, 387. |

On the substance, Verizon has little to say about these disclosures and did not engage at all with Dr. Madisetti's extensive opinions on these topics. At most, Verizon asserts that the specification never uses the phrase "common TDD frame." But the point is not whether that term (which is not a claim term) is used; the point is whether the specification provides written description for the claimed subject matter. *Cf. Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1345 (Fed. Cir. 2016). It does.

Third, Verizon's criticism that General Access's response cited portions of the specification not explicitly discussed in Dr. Madisetti's report is utterly irrelevant. Dkt. 164 at 6-8. Unsurprisingly, the Federal Circuit has held that the specification itself may create a genuine issue of material fact on the question of written description. *ScriptPro, LLC v. Innovation Assocs., Inc.*, 762 F.3d 1355, 1361 (Fed. Cir. 2014) ("In any event, the specification itself creates a genuine issue of material fact on this question . . . ."). This applies with more force here, where Dr. Madisetti discussed the same concepts, albeit while occasionally analyzing different portions of the specification. For example,

Verizon faults General Access for discussing the Roman paper. *See* Def. Ex. 8 at 9 (highlighting in yellow the discussion of the Roman paper). But Dr. Madisetti cited the same column of the specification and made the same point: The specification criticized the prior art for failing to disclose "global coordination." Ex. 10, at ¶¶ 382-83, 387. Thus, the portions of the specification General Access identified and all of Dr. Madisetti's opinions, taken together, create a genuine dispute of fact. *See Xitronix Corp. v. KLA-Tencor Corp.*, No. A-08-CA-723, 2010 WL 11507169, at *9 (W.D. Tex. Oct. 27, 2010) (evidence "from the specification itself" and plaintiff's expert defeat summary judgment).

### III.   Verizon's Disclaimer Argument Re-Writes the Federal Circuit's Sprint Decision

Verizon's mangled attempt to distinguish the *Sprint* case makes matters worse, not better. According to Verizon, Judge Schroeder's decision in the *Sprint* litigation is irrelevant because it addressed only "spatial separation." Dkt. 164 at 9. But this is distinction without difference. As Judge Schroeder explained, "to disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a 'clear and unmistakable' surrender." Ex. 12, *General Access Sols., Ltd., v. Sprint Spectrum L.P.*, 2:20-CV-00007, Dkt. 105 at 8 (E.D. Tex. Sept. 29, 2020). Applying that rule, Judge Schroeder held that General Access's statements about Vornefeld in the Sprint IPR did "not rise to a disclaimer." *Id.* at 35.

That reasoning applies with even more force to Verizon's "synchronous" argument. While Verizon represents that "the Federal Circuit held disclosure of **synchronous** transmissions to be insufficient to show the transmissions are in the same frame," that is not what the decision says. Dkt. 164 at 4. The words "synchronous" or "synchronized" appear nowhere in the Federal Circuit's decision. Likewise, Verizon has not identified any General Access statements in the Sprint IPR or Verizon IPR that reference "synchronous" or "synchronized" transmissions. Thus, Verizon's disclaimer argument is even weaker than the "spatial separation" disclaimer argument that Judge Schroeder rejected. General Access did not make any "clear and unmistakable" statements about

4

"synchronous transmissions"—in fact, it did not make any statements at all about "synchronous transmissions."

Making matters worse, Verizon contends that General Access disclaimed "synchronous" transmissions merely by **accurately** quoting the Federal Circuit's decision in the Verizon IPR. *See* Def. Ex. 8 at 9 (highlighting in yellow portions of General Access's response that accurately quoted the same Federal Circuit decision that Verizon mischaracterized). But again, the statements Verizon points to say nothing at all about "synchronized transmissions." Instead, those statements include the same "spatial separation" point Judge Schroeder found was not disclaimer.

### IV.  Verizon Quotes Its Own Lawyer, Not the Named Inventor

In its zeal to invalidate the Asserted Claims, Verizon resorts to quoting its own lawyer and attributing his words to the named inventor, and improperly attempts to sweep Mr. Struhsaker's "contrary" testimony under the rug. That Verizon characterizes it as "contrary" reveals a simple fact: Mr. Struhsaker's testimony that it is "the same frame" runs "contrary" to Verizon's misleading account of his testimony. Notably, the quotes Verizon identifies to try and wiggle out of that testimony are all quotes from Mr. Rosenthal, Verizon's lawyer, not Mr. Struhsaker. For example, Verizon trumpets in bold Mr. Rosenthal's question that "**you can't have a single TDD frame**." But Mr. Struhsaker's answer to that question is clearly discussing physical limitations of antenna arrays and he even mentions building his "first array at age 21." *See* Ex. 13, Struhsaker Dep. 107:10-108:22. The same is true for the "in this patent a TDD frame addresses one sector," and "cannot use . . . the TDD frame for sector 1 to get to . . . sector 2," quotes Verizon relies on. Those are quotes of Mr. Rosenthal questions, and Mr. Struhsaker's answers, when read in full, address the physical limits of antenna arrays. *See id.* at 117:8-16, 96:21-97:4. The only actual quote of Mr. Struhsaker that Verizon includes is the one in which he unequivocally averred that it is "the same frame." *Id.* at 191:5. Thus, it is Verizon, not General Access, "that ignores his actual testimony."

5

Dated: April 22, 2024                        Respectfully submitted,

*/s/ Glen E. Summers*
Glen E. Summers (CO Bar No. 30635)
LEAD ATTORNEY
Nosson D. Knobloch (CO Bar No. 42134)
Giovanni J. Sanchez (CO Bar No. 59696)
Taylor Kelson (CO Bar No. 56910)
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
glen.summers@bartlitbeck.com
nosson.knobloch@bartlitbeck.com
giovanni.sanchez@bartlitbeck.com
taylor.kelson@bartlitbeck.com

Michael J. Valaik (IL Bar No. 6276086)
**BARTLIT BECK LLP**
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
michael.valaik@bartlitbeck.com

T. John Ward (TX Bar No. 00794818)
Charles Everingham IV (TX Bar No. 00794818)
Andrea L. Fair (TX Bar No. 24078488)
**WARD SMITH & HILL, PLLC**
1507 Bill Owens Pkwy.
Longview, Texas 75604
Telephone: (903) 757-6400
jw@wsfirm.com
ce@wsfirm.com
andrea@wsfirm.com

*Attorneys for Plaintiff General Access Solutions, Ltd.*

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on April 22, 2024, which will send a notification of such filing to all counsel of record.

*/s/ Glen E. Summers*
Glen E. Summers

## CERTIFICATE OF AUTHORIZATION TO SEAL

I hereby certify that pursuant to the protective order in the above-captioned cases, this motion contains confidential information. Accordingly, this document is to be filed under seal.

*/s/ Glen E. Summers*
Glen E. Summers