**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON SERVICES CORP., VERIZON BUSINESS GLOBAL LLC, VERIZON BUSINESS NETWORK SERVICES LLC, VERIZON CORPORATE SERVICES GROUP INC., VERIZON DATA SERVICES LLC, and VERIZON ONLINE LLC, <br><br> Defendants, <br><br> ERICSSON, INC., <br><br> Intervenor-Defendant. | Case No. 2:22-cv-00394 JRG <br><br> JURY TRIAL DEMANDED <br><br> FILED UNDER SEAL |

**JOINT PROPOSED PRETRIAL ORDER FOR TRIAL IN**
*GENERAL ACCESS SOLUTIONS, LTD. V. CELLCO PARTNERSHIP D/B/A*
*VERIZON WIRELESS, ET AL.[1]*

Plaintiff General Access Solutions, Ltd. ("General Access") and Defendants Cellco

Partnership d/b/a Verizon Wireless, Verizon Services Corp., Verizon Business Global LLC,

---

[1] Submissions that are agreed to by both General Access and Verizon and Ericsson are not highlighted.

Submissions proposed by General Access that are not agreed to by Verizon and Ericsson are bracketed and highlighted in teal. Submissions proposed by Verizon and Ericsson that are not agreed to by General Access are bracketed and highlighted in yellow. The parties have entered their objections, explanations, citations, and commentary in footnotes only.

The parties have filed motions for summary judgment, *Daubert* motions, and motions *in limine* on many issues in this case. The outcomes of these pending motions may affect portions of these instructions and the parties' proposals. The parties reserve the right to amend these instructions and proposals prior to the Court's charge conference, and nothing within these proposed instructions should be construed as a waiver of the parties' positions, arguments, or objections to the proposed instructions.

Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., Verizon Data Services LLC, and Verizon Online LLC (collectively, "Verizon") and Intervenor-Defendant Ericsson Inc. ("Ericsson")[2] respectfully submit this Joint Proposed Pretrial Order. This cause is scheduled for a pre-trial management conference on May 28, 2024, pursuant to Local Rule CV-16 and Rule 16 of the Federal Rules of Civil Procedure.

## I.    COUNSEL FOR THE PARTIES

**Plaintiff:**

> Glen E. Summers (CO Bar No. 30635)
> LEAD ATTORNEY
> Nosson D. Knobloch (CO Bar No. 42134)
> Giovanni J. Sanchez (CO Bar No. 59696)
> Taylor Kelson (CO Bar No. 56910)
> **BARTLIT BECK LLP**
> Denver, CO 80202
> Telephone: (303) 592-3100
> glen.summers@bartlitbeck.com
> nosson.knobloch@bartlitbeck.com
> giovanni.sanchez@bartlitbeck.com
> taylor.kelson@bartlitbeck.com
>
> Michael J. Valaik (IL Bar No. 6276086)
> **Bartlit Beck LLP**
> 54 West Hubbard Street, Suite 300
> Chicago, IL 60654
> Telephone: (312) 494-4400
> michael.valaik@bartlitbeck.com
>
> T. John Ward (TX Bar No. 00794818)
> Charles Everingham IV (TX Bar No. 00794818)
> Andrea L. Fair (TX Bar No. 24078488)

---

[2] Verizon and Ericsson are collectively referred to in this Order as "Defendants." For clarity, however, because Plaintiff has not accused any Ericsson product or service of infringing U.S. Patent No. 9,426,794, any reference to "Defendants" in this Order in relation to the '794 patent applies only to the Verizon defendants unless noted otherwise. Additionally, because Ericsson has not asserted any defense of patent ineligibility, any reference to "Defendants" in this Order in relation to patent ineligibility applies only to the Verizon defendants unless otherwise noted. Any reference to "Defendants" in this Order in relation to U.S. Patent No. 7,230,931 refers to both Verizon and Ericsson.

**WARD, SMITH & HILL, PLLC**
1507 Bill Owens Parkway
Longview, TX 75604
Telephone: (903) 757-6400
jw@wsfirm.com
ce@wsfirm.com
andrea@wsfirm.com

Amy J. Wildermuth (IL Bar No. 6256999)
17811 Comstock Road
Wayzata, MN 55391
Telephone: (801) 913-4068
amy.wildermuth@gmail.com

**Defendant Verizon:**

Katherine Q. Dominguez (NY Bar No. 4741237)
LEAD ATTORNEY
Josh A. Krevitt (NY Bar No. 2568228)
Brian A. Rosenthal (NY Bar No. 3961380)
Sung Bin Lee (NY Bar No. 5701099)
**Gibson, Dunn & Crutcher LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
kdominguez@gibsondunn.com
jkrevitt@gibsondunn.com
brosenthal@gibsondunn.com
slee3@gibsondunn.com

Jaysen S. Chung (CA Bar No. 280708)
**Gibson, Dunn & Crutcher LLP**
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 393-8271
jschung@gibsondunn.com

Andrew W. Robb (CA Bar No. 291438)
**Gibson, Dunn & Crutcher LLP**
310 University Avenue
Palo Alto, CA 94301
Telephone: (650) 849-5334
arobb@gibsondunn.com

Ashbey N. Morgan (TX Bar No. 24106339)

3

**Gibson, Dunn & Crutcher LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone: (214) 698-3112
anmorgan@gibsondunn.com

Deron R. Dacus (TX Bar No. 00790553)
**The Dacus Firm, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Phone: (903) 705-1117
ddacus@dacusfirm.com

**Intervenor-Defendant Ericsson:**

Douglas M. Kubehl (TX Bar No. No. 00796909)
LEAD ATTORNEY
Jeffery S. Becker (TX Bar No. 24069354)
Melissa L. Muenks (TX Bar No. 24097442)
Griffin Tolle (TX Bar No. 24115349)
**Baker Botts L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
doug.kubehl@bakerbotts.com
jeff.becker@bakerbotts.com
melissa.muenks@bakerbotts.com
griffin.tolle@bakerbotts.com

## II.   STATEMENT OF JURISDICTION

This is an action under the patent laws of the United States, 35 U.S.C. § 271, et. seq. This

Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). Venue is not

disputed for the purpose of this action.  Personal jurisdiction is not disputed for the purpose of this

action.

4

## III.    NATURE OF ACTION

### A.    General Access's Statement

Plaintiff General Access Solutions, Ltd. ("General Access") contends that Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Services Corp., Verizon Business Global LLC, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., Verizon Data Services LLC, and Verizon Online LLC (collectively, "Verizon") have infringed and/or infringe U.S. Patent No. 7,230,931 ("the '931 Patent") and U.S. Patent No. 9,426,794 ("the '794 Patent"). The '931 Patent and '794 Patent are referred to collectively as the "Asserted Patents." Ericsson, Inc. ("Ericsson"), is an Intervenor-Defendant; Verizon and Ericsson are referred to collectively as "Defendants."

General Access seeks damages representing a reasonable royalty for Defendants' infringement[3] of the Asserted Patents, plus pre-judgment and post-judgment interest. General Access further contends that Defendants' infringement of the '931 Patent was willful and seeks enhanced damages for Defendants' willful infringement.

---

[3] **Verizon and Ericsson's Statement**: As explained in further detail below in Section IV.C., while General Access has asserted an infringement claim against Verizon's use of Ericsson products, General Access has not asserted that Ericsson infringes or that Ericsson owes damages in this case, and that fact is confirmed by General Access's pleadings, infringement contentions, and expert reports, as well as confirmations in discovery responses and the parties' correspondence. It is inaccurate to refer in this case to "Defendants' infringement" when referring to Ericsson. This statement applies to all references to any alleged infringement by Ericsson in this Pretrial Order, the proposed preliminary and final jury instructions, and the verdict form.

**General Access's Statement**: Defendants misstate the record. General Access merely agreed that the above represented Ericsson's view. Defendants edited out that part with an ellipsis. In context, the statement to which General Access acquiesced stated as follows: "*Ericsson does not believe* that fact is admissible in this case, given that there is no infringement claim against Ericsson, willful or otherwise." As explained in General Access's opposition to Defendants' motions *in limine*, Dkt. 214, Ericsson intervened in this case on the basis that General Access "*is accusing* Ericsson equipment allegedly provided to Verizon of infringing the '931 Patent." Dkt. 41 at 5. Upon its intervention, that accusation applied equally to Ericsson.

General Access accuses Verizon's 5G TDD base stations of infringing Claims 28 and 29 of the '931 Patent, including base stations operating in C-Band and mmWave spectrum. Verizon's 5G TDD base stations include baseband units, digital units, radios, antennas, and related hardware and software used to operate Verizon's 5G TDD network. Some of Verizon's infringing base stations are manufactured by Ericsson. Additional information concerning the infringing base stations can be found in the expert reports of Dr. Madisetti and Mr. Kennedy.

General Access accuses the following Verizon products of infringing Claims 1, 2, and 5 of the '794 Patent: fixed wireless routers, dedicated mobile hotspots or "MiFi devices," and mobile phones that are capable of communicating with Verizon's 4G and/or 5G network and of routing information to mobile stations using Wi-Fi. A detailed list of infringing devices can be found in the expert reports of Dr. Madisetti and Mr. Kennedy.

**B.    Verizon and Ericsson's Statement**

Plaintiff's patent infringement allegations, and all related allegations, are meritless. Verizon does not infringe Asserted Claims 28 and 29 of the '931 Patent or Asserted Claims 1, 2, and 5 of the '794 patent. Ericsson's products do not infringe Asserted Claims 28 and 29 of the '931 Patent. In addition, Verizon contends the Asserted Claims of the '931 and '794 Patents are not patent-eligible under 35 U.S.C. § 101. Defendants contend that the Asserted Claims of both Patents-in-suit also are invalid as obvious under 35 U.S.C. § 103, and for lack of enablement and adequate written description under 35 U.S.C. § 112. Furthermore, Defendants contend that the Asserted Claims of the '931 Patent and the '794 Patent are invalid for obviousness-type double patenting in view of U.S. Patent Nos. 10,820,312 and 9,379,916, respectively. Thus, Plaintiff is not entitled to any relief. Plaintiff also has no evidence that Verizon's infringement is or has been willful and thus, Plaintiff is not entitled to enhanced damages. This is not an exceptional case under which Plaintiff would be

entitled to attorneys' fees and costs. To the contrary, Defendants are entitled to attorneys' fees under 35 U.S.C. § 285, costs, and any other relief the Court finds appropriate.

Verizon further counterclaims for a declaratory judgment of no infringement as to the Asserted Claims of the '931 and '794 Patents. Verizon additionally counterclaims for a declaratory judgment that the Asserted Claims of the '931 and '794 Patents are not patent-eligible under 35 U.S.C. § 101. Verizon likewise counterclaims for a declaratory judgment that the Asserted Claims of the '931 and '794 Patents are invalid as obvious under 35 U.S.C. § 103, and for lack of enablement and adequate written description under 35 U.S.C. § 112. Verizon also counterclaims for a declaratory judgment that the Asserted Claims of the '931 Patent and the '794 Patent are invalid for obviousness-type double patenting in view of U.S. Patent Nos. 10,820,312 and 9,379,916, respectively.

## IV.    CONTENTIONS OF THE PARTIES

The parties provide the following statement of contentions without waiver of any right, affirmative defense, response given during discovery, or opinion expressed by their experts. By providing these contentions, the parties do not waive any of its motions *in limine*, motions for summary judgment, *Daubert* motions, motions to strike, or any other relevant motion.

### A.    General Access's Contentions

1.    General Access owns all right, title and interest to the Asserted Patents, including all rights to seek past and future damages for infringement by Defendants.

2.    The '931 Patent and '794 Patent were assigned to General Access on August 15, 2011. The assignment included all rights to sue for past or future infringement.

7

2.      Defendants have directly infringed the following claims of the Asserted Patents (the "Asserted Claims"): Claims 28 and 29 of the '931 Patent ("the '931 Asserted Claims") and Claims 1, 2, and 5 of the '794 Patent ("the '794 Asserted Claims").

3.      To the extent Defendants have not literally infringed the Asserted Claims, they have infringed the Asserted Claims under the doctrine of equivalents.

4.      Ericsson's Accused Products infringe Claims 28 and 29 of the '931 Patent.

5.      To the extent Ericsson's Accused Products do not literally infringe Claims 28 and 29 of the '931 Patent, they infringe under the doctrine of equivalents.

6.      Defendants have willfully infringed the Asserted Claims of the '931 Patent.

7.      Verizon's 5G TDD base stations infringe the '931 Asserted Claims, including base stations operating in C-Band and mmWave spectrum. Some of Verizon's infringing base stations are manufactured—and imported and/or sold in the United States—by Ericsson.

8.      The following Verizon products infringe the '794 Asserted Claims: fixed wireless routers, dedicated mobile hotspots or "MiFi devices," and mobile phones that are capable of communicating with Verizon's 4G and/or 5G network and of routing information to mobile stations using Wi-Fi.

9.      General Access is entitled to reasonable royalty damages for Verizon's infringement of the Asserted Patents (plus pre-judgment and post-judgment interest). In support of its claim for damages, General Access contends that Verizon's infringement of the '931 Asserted Claims contributes significantly to the performance of Verizon's 5G network, and that Verizon's infringement the '794 Asserted Claims contributes significantly to the hotspot capability and marketability of its fixed wireless routers, MiFi devices, and mobile phones.

10.     In addition to any damages awarded by the jury, General Access contends that it is entitled to post-trial supplemental damages including (1) damages for any pre-verdict infringement not included in the jury's damages award, (2) damages for post-verdict infringement through the entry of final judgment, and (3) damages for post-judgment infringement through the '931 Patent's expiration.[4]

11.     General Access seeks its costs and expenses for this action, and a finding that this is an exceptional case under 35 U.S.C. § 285 warranting an award of General Access's attorneys' fees, plus any further and additional relief that the Court deems just and proper.

12.     Defendants' defenses are without merit.

**B.     Verizon and Ericsson's Contentions**

1.     Verizon has not infringed Asserted Claims 28 and 29 of the '931 Patent.

2.     Verizon has not infringed Asserted Claims 1, 2, and 5 of the '794 Patent.

3.     Verizon's alleged infringement of the Asserted Claims has not been, and is not, willful.  Moreover, as explained in Defendants' pending Motion *in Limine* No. 2, General Access has no evidence of pre-suit notice.  *See* Dkt. No. 193 at 3–8.

5.     Ericsson's products do not infringe Asserted Claims 28 and 29 of the '931 Patent.

---

[4] **Verizon and Ericsson's Statement**:  General Access has not previously raised this, and its expert does not disclose this theory.  Verizon and Ericsson do not agree that this issue is properly triable.

**General Access's Statement**: General Access's Complaint included a request for damages for "future infringement of the '931 Patent." Dkt. 1 at 26. The Court has equitable authority to award ongoing royalties that occur after a jury's verdict. *See, e.g., Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, No. 2:15-CV-1202-WCB, 2017 WL 3034655, at *2 (E.D. Tex. July 18, 2017) (request for post-verdict damages sufficient to preserve the issue of ongoing royalties, which the Court has equitable authority to grant).

6.      General Access has no supportable infringement theory as to the '931 Patent under the doctrine of equivalents.  *See generally* Dkt. No. 135.  General Access has not alleged a theory of infringement as to the '794 Patent under the doctrine of equivalents.

7.      For the '931 Patent, Plaintiff is not entitled to a priority date earlier than September 5, 2001, the filing date of the application that issued as the '931 Patent.

8.      The Navini Ripwave System is prior art to Asserted Claims 28 and 29 of the '931 Patent under at least 35 U.S.C. §§ 102(a) and/or (g).

9.      U.S. Patent No. 5,838,674 ("Forssén") is prior art to Asserted Claims 28 and 29 of the '931 Patent under at least 35 U.S.C. §§ 102(a), (b), (e), and/or (g).

10.      U.S. Patent Publication No. 2002/0021684 ("Toshimitsu") is prior art to Asserted Claims 28 and 29 of the '931 Patent under at least 35 U.S.C. §§ 102(a), (e), and/or (g).

11.      Verizon contends the Asserted Claims 28 and 29 of the '931 Patent are not patent-eligible under 35 U.S.C. § 101.[5]

---

[5] **Verizon's Statement:** "Patent eligibility under § 101 is a question of law that may involve underlying questions of fact."  *Free Stream Media Corp. v. Alphonso Inc.*, 996 F.3d 1355, 1361 (Fed. Cir. 2021). Verizon contends that the "threshold" legal issue of patent eligibility, *Bilski v. Kappos*, 561 U.S. 593, 602 (2010), including any underlying questions of fact, is for the Court to decide based on a legal analysis of the claims. *See, e.g., Diamond v. Diehr*, 450 U.S. 175, 192–93 (1981) (holding claims eligible because "we do not view [them] as an attempt to patent a mathematical formula, but rather to be drawn to an industrial process for the molding of rubber products"); *Bilski*, 561 U.S. at 609 ("[T]he Court resolves this case narrowly on the basis of this Court's decisions in *Benson*, *Flook*, and *Diehr*, which show that petitioners' claims . . . are attempts to patent abstract ideas.").  The Supreme Court repeatedly and consistently has held that patent eligibility is a legal question for the courts, and not a factual determination for the jury. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014) ("*we* determine whether the claims at issue are directed to [a] patent-ineligible concept[]," and "*we* . . . determine whether the additional elements transform the nature of the claim into a patent-eligible application") (emphases added); *see also Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 566 U.S. 66, 72 (2012) ("*We* must determine whether the claimed processes have transformed these

12.    Asserted Claims 28 and 29 of the '931 Patent are invalid as obvious under 35 U.S.C. § 103 in view of the following prior art references: the Navini Ripwave System, the Navini Ripwave System in combination with Forssén, and the Navini Ripwave System in combination with Toshimitsu.

13.    Asserted Claims 28 and 29 of the '931 Patent are invalid for obviousness-type double patenting in view of U.S. Patent No. 10,820,312 (the "'312 patent") and the '312 patent in combination with Forssén.[6]

---

unpatentable natural laws into patent-eligible applications of those laws.") (emphasis added); *Diamond v. Diehr*, 450 U.S. 175, 192–93 (1981) (holding claims eligible because "*we* do not view [the claims] as an attempt to patent a mathematical formula, but rather to be drawn to an industrial process for the molding of rubber products") (emphasis added); *Parker v. Flook*, 437 U.S. 584, 594–95 (noting "*our* conclusion" that "respondent's application contains no claim of patentable invention") (emphasis added).

The Supreme Court has not once suggested that this patent-eligibility inquiry involves factual questions to be decided by the jury; rather, courts must decide *both steps* of patent eligibility as a question of law. Verizon proposes that the parties confer regarding a proposed schedule for submitting findings of fact and conclusions of law with respect to bench trial issues, subject to the Court's guidance.

**General Access's Statement:** Without agreeing to the timing of when Defendants are required to raise this defense, General Access agrees that patent eligibility under Section 101 should not be presented to the jury, as reflected in the proposed jury instructions, which do not include the issue. To the extent that the Court will entertain this issue, it can be addressed in the context of Rule 50 motions.

[6] **Verizon and Ericsson's Statement:** Defendants propose that the Court resolve obviousness-type double patenting in a bench trial outside the presence of the jury, after the jury trial concludes. *See, e.g.*, *Contentguard Holdings, Inc. v. Google Inc.*, No. 2:14-cv-61-JRG, 2016 WL 7665900, at *5 (E.D. Tex. July 8, 2016) (recognizing that obviousness-type double patenting is a legal issue for the Court, not the jury). Verizon and Ericsson propose that the parties confer regarding a proposed schedule for submitting findings of fact and conclusions of law with respect to bench trial issues, subject to the Court's guidance.

14.    Asserted Claims 28 and 29 of the '931 Patent are invalid for lack of enablement under 35 U.S.C. § 112.

15.    Asserted Claims 28 and 29 of the '931 Patent are invalid for lack of adequate written description under 35 U.S.C. § 112.

16.    Plaintiff has not been damaged by Verizon's alleged infringement of the '931 Patent. Plaintiff is not entitled to damages or other relief under any theory. Plaintiff also is not entitled to any pre-judgment or post-judgment interest.

17.    With respect to the '931 Patent, Plaintiff is not entitled to any attorneys' fees or costs under 35 U.S.C. § 285.

18.    With respect to the '931 Patent, Defendants are entitled to costs, expenses, and attorneys' fees under 35 U.S.C. § 285, and any other relief the Court finds appropriate.

19.    Verizon has not infringed Asserted Claims 1, 2, and 5 of U.S. Patent No. 9,426,794 (the "'794 patent").

20.    For the '794 patent, Plaintiff is not entitled to a priority date earlier than April 20, 2001, the filing date of the application that issued as U.S. Patent No. 7,346,347—to which the '794 patent claims priority.

21.    The MobileStar System is prior art to Asserted Claims 1, 2, and 5 of the '794 patent under at least 35 U.S.C. §§ 102(a) and/or (g).

---

**General Access's Statement**: Without agreeing to the timing of when Defendants are required to raise this defense, General Access agrees that Defendants' obviousness-type double patenting defense should not be presented to the jury, as reflected in the proposed jury instructions, which do not include the issue. To the extent that the Court will entertain the issue for the first time at this late stage of the case, it can be addressed in the context of Rule 50 motions. There is no need for a separate bench trial.

22.     IEEE 802.11 (1999) is prior art to Asserted Claims 1, 2, and 5 of the '794 patent under at least 35 U.S.C. §§ 102(a), (b), and/or (g).

23.     IEEE 802.11a (1999) is prior art to Asserted Claims 1, 2, and 5 of the '794 patent under at least 35 U.S.C. §§ 102(a), (b), and/or (g).

24.     IEEE 802.11b (1999) is prior art to Asserted Claims 1, 2, and 5 of the '794 patent under at least 35 U.S.C. §§ 102(a), (b), and/or (g).

25.     Asserted Claims 1, 2, and 5 of the '794 patent are not patent-eligible under 35 U.S.C. § 101.

26.     Asserted Claims 1, 2, and 5 of the '794 patent are invalid as obvious under 35 U.S.C. § 103 in view of the following prior art references: the MobileStar System, and the MobileStar System in combination with IEEE 802.11 (1999), IEEE 802.11a (1999), and/or IEEE 802.11b (1999).

27.     Asserted Claims 1, 2, and 5 of the '794 patent are invalid for obviousness-type double patenting in view of U.S. Patent No. 9,379,916.

28.     Asserted Claims 1, 2, and 5 of the '794 patent are invalid for lack of enablement under 35 U.S.C. § 112.

29.     Asserted Claims 1, 2, and 5 of the '794 patent are invalid for lack of adequate written description under 35 U.S.C. § 112.

30.     Plaintiff has not been damaged by Verizon's alleged infringement of the '794 patent. Plaintiff is not entitled to damages or other relief under any theory. Plaintiff also is not entitled to any pre-judgment or post-judgment interest.

31.     With respect to the '794 patent, Plaintiff is not entitled to any attorneys' fees or costs under 35 U.S.C. § 285.

32.    With respect to the '794 patent, Defendants are entitled to costs, expenses, and attorneys' fees under 35 U.S.C. § 285, and any other relief the Court finds appropriate.

33.    General Access's claims are without merit.

## C.    Ericsson's Contention Regarding Infringement Allegations[7]

Throughout this case, General Access has not asserted that Ericsson infringes the '931 Patent (as opposed to Verizon infringing by using Ericsson equipment), and Ericsson has made clear on multiple occasions that it has understood and has defended this case based upon that understanding. General Access's Complaint alleges that **Verizon infringes** the '931 Patent including by using Ericsson's 5G base stations. Dkt. No. 1 at 1 ("Complaint against **Defendants** [listing Verizon entities] (**collectively, "Defendants" or "Verizon"**)"), 9 (alleging "**Defendants directly infringe** Claims 28 and 29 of the '931 Patent"). Similarly, General Access's infringement contentions identify **only Verizon** as an alleged infringer of the '931 Patent. Infringement Contentions at 3 ("Pursuant to Patent Rule 3-1(d), **General Access alleges that Verizon infringes** claims 28 and 29 of the '931 patent and claims 1-2 and 4-6 of the '794 patent."); *id* at Ex. A, 1 ("**Verizon has directly infringed the '931 patent**—either literally or under the doctrine of equivalents—by making, using, selling, offering for sale, and/or importing into the United States Verizon's Accused 5G Products, which are covered by claims 28 and 29 of the '931 patent (the "Asserted Claims")."

When Ericsson sought to intervene in this case, General Access conditioned its non-opposition to that intervention on a demand that Ericsson agree that it "does not intend to expand the scope of the case beyond what is pleaded in General Access' Complaint, the Initial Infringement

---

[7] **General Access's Statement in Response to this Section:** Without any advance notice, Ericsson added section IV.C (consisting of a full 5 pages of material) to this proposed pretrial order at 11pm on May 20, 2024, just one hour before the filing deadline. Despite having two calls with Ericsson the day of filing, Ericsson failed to even mention that it would inserting any such material. Ericsson's last-minute addition should be stricken, and General Access reserves the right to respond.

Contentions (P.R. 3-1), or any amendments thereto." February 26, 2023 email from General Access counsel Michael Valaik to Ericsson counsel Mellissa Muenks; *see also* Dkt. No. 47 (Ericsson Answer in Intervention) at 1 ("Ericsson's intervention in this case is limited to defending Verizon from and against claims arising out of or in connection with, in whole or in part, the products, software, or services that Ericsson actually has provided to Verizon."). After Ericsson intervened, General Access never amended its pleadings or its infringement contentions to allege that Ericsson infringes or to make a damages claim against Ericsson.

To the contrary, on multiple occasions during discovery in this case, Ericsson declined to produce information responsive to General Access's overly-broad discovery requests citing "**GAS' lack of any infringement claim (willful or otherwise) against Ericsson and as a violation of the terms GAS negotiated for Ericsson's intervention into the case**." Ericsson's Objections and Responses to GAS Notice of Rule 30(b)(6) Deposition at Topics 1, 2, 3, 14, 16, 17); *see also* Ericsson's Responses and Objections to GAS's Interrogatory Nos. 5, 6–9 ("Ericsson further objects to this Interrogatory as unduly burdensome considering that GAS has not alleged that Ericsson infringes any claim of any asserted patent and does not seek damages against Ericsson.") General Access never contested Ericsson's understanding that General Access had no infringement claim against Ericsson (as opposed to its claim against Verizon for using Ericsson equipment).

General Access's expert reports re-confirmed that General Access's infringement and damages claims were against Verizon, not Ericsson. For example, in its infringement expert report, General Access stated:

- "**Verizon directly infringes** the Asserted Claims, both literally and under the doctrine of equivalents. **Verizon infringes** Claim 28 by making and/or using its 5G TDD base stations, and by selling and/or offering to sell 5G network subscriptions to its customers. **Verizon**

**infringes** Claim 29 by using its 5G TDD base stations, and by selling and/or offering to sell 5G network subscriptions to its customers. This section discusses some examples of how Verizon's 5G TDD Network infringes Claims 28 and 29. Please note, however, that this section must be understood in conjunction with Exhibit A, which provides additional evidence and explanation of **Verizon's infringement**." Madisetti Report ¶ 145.

And in its damages expert report, GAS explicitly stated:

- "I have been asked to assess the nature and extent of damages suffered by General Access **through Verizon's infringement** of certain patents at issue in this litigation (hereinafter, the 'Patents in Suit')." Kennedy Report ¶ 23. (Verizon's damages expert in the case understood the same: "I am requested to analyze damages in connection with allegations of patent infringement made by General Access Solutions, Ltd. ("Plaintiff" or "GAS") **against Verizon**." Bakewell Report ¶ 8.)

- "I understand that the expert report of Prof. Madisetti discusses the above patents and **claims that have been asserted against Verizon** in this matter." Kennedy Report ¶ 24.

- "As will be discussed in more detail later in my report, **I understand from General Access' technical expert, Professor Vijay Madisetti, that Verizon infringes** one or more of the '931 Asserted Claims **when it makes or uses** its 5G "Time Division Duplexing" ("TDD") wireless network, or sells and/or offers for sale, service on that network." Kennedy Report ¶ 27.

- "I understand from Prof. Madisetti that **infringement of the '931 Patent began with Verizon's initial deployment of its TDD 5G network**. Since that deployment began after the '931 Patent issuance date, infringement of the '931 Patent began with Verizon's initial deployment of its TDD 5G network." Kennedy Report ¶ 364.

16

- "The **parties to each Hypothetical Negotiation would be General Access as the Licensor and Verizon as the Licensee**." Kennedy Report ¶ 478. (Verizon's damages expert in the case understood the same: "I assume that the hypothetical negotiation for a license under the '931 patent would take place in the late-2018 to early-2019 timeframe, with GAS as hypothetical licensor and **Verizon as hypothetical licensee**." Bakewell Report ¶ 84.)

- "This calculation can be seen in Exhibit 1A **as the damages due, for Verizon's infringement of the '931 Patent**." Kennedy Report ¶ 478.

After expert reports, in connection with resolving a motion Ericsson planned to file to strike General Access's violation of the mediation privilege, Ericsson again confirmed the parties understanding that there was no infringement claim of any kind in this case against Ericsson. General Access's lead counsel responded with an *agreement* to the following language, and expressing nothing about any infringement claim existing against Ericsson:

> **General Access can agree** to the following slightly revised language:
>
> General Access believes it may be entitled to introduce evidence of whether Ericsson was aware of the '931 Patent by virtue of the Sprint case. **Ericsson does not believe that fact is admissible in this case, given that there is no infringement claim against Ericsson, willful or otherwise**. Ericsson and General Access agree to determine a mutually-agreeable manner of admitting facts related to Ericsson's knowledge of the '931 Patent, if the Court determines those facts are admissible in this case. Subject to that agreement, General Access agrees that it will not refer in this case to mediation or any statements made in connection with any mediation in this or any other case.

March 27, 2024 email from General Access lead counsel Glen Summers to Ericsson lead counsel Doug Kubehl.

On May 6, 2024, Ericsson and Verizon provided General Access with drafts of pretrial materials, where Ericsson again included language confirming "Plaintiff accuses Verizon of infringing the asserted claims of the '931 Patent in part by using Ericsson products. However, Plaintiff did not

sue Ericsson for infringement and it makes no claim of infringement against Ericsson in this case. On May 13, 2024, General Access provided its version of the pretrial materials, generally referring to "Defendants" (defined as including Ericsson) as the subject of its infringement claims. May 13, 2024 email from General Access counsel Giovanni Sanchez to Verizon and Ericsson counsel. Understanding this to be oversight in drafting, Ericsson and Verizon sent redlines to General Access on May 16, removing the incorrect language regarding "Defendants'" (defined as including Ericsson) alleged infringement. May 16, 2024 email from Andrew Robb counsel for Verizon to counsel for General Access. On Sunday evening, May 19 at 10:53 p.m., the day before the due date for this submission, General Access for the first-time notified Ericsson and Verizon that it now was contending that it has a live infringement claim against Ericsson. Email from General Access counsel Giovanni Sanchez to counsel for Verizon and Ericsson (stating in a footnote to an attached document that "Ericsson intervened in this case on the basis that General Access '*is accusing* Ericsson equipment allegedly provided to Verizon of infringing the '931 Patent.' Dkt. 41 at 5. Upon its intervention, that accusation applied equally to Ericsson."). May 19, 2024 email from General Access counsel Giovanni Sanchez to Verizon and Ericsson counsel.

While General Access has stated a claim that Verizon infringes through its use of Ericsson equipment, it never has alleged in any pleading, expert report, or other document that Ericsson itself infringes any patent in this case, nor has it ever contested Ericsson's repeated confirmations that General Access has made no such claim in this case. Ericsson has developed its defenses and strategies in this case based on that clear understanding. Ericsson believes that General Access's attempt to inject an infringement claim against Ericsson into the case at this stage is bad faith litigation misconduct, and Ericsson reserves the right to seek appropriate sanctions against General Access.

### D.    General Access's Rebuttal Contentions

1.    The '931 Patent is entitled to a priority date at least as early as April 2001.

2.    The Navini Ripwave System is not prior art to the '931 Patent.

3.    Asserted Claims 28 and 29 of the '931 Patent are patent-eligible under 35 U.S.C. § 101.

4.    Asserted Claims 28 and 29 of the '931 Patent are not invalid as obvious under 35 U.S.C. § 103.

5.    Asserted Claims 28 and 29 of the '931 Patent are not invalid for obvious-type double patenting.

6.    Asserted Claims 28 and 29 of the '931 Patent are not invalid for lack of written description or enablement under 35 U.S.C. § 112.

7.    The MobileStar System is not prior art to the '794 Patent.

8.    Asserted Claims 1, 2, and 5 of the '794 patent are not invalid as obvious under 35 U.S.C. § 103.

9.    Asserted Claims 1, 2, and 5 of the '794 patent are not invalid for obvious-type double patenting.

10.    Asserted Claims 1, 2, and 5 of the '794 patent are not invalid for lack of written description or enablement under 35 U.S.C. § 112.

11.    Defendants are not entitled to any costs, expenses, or attorneys' fees under 35 U.S.C. § 285.

12.    Defendants' counterclaims are without merit.

13.    Defendants are not entitled to any relief.

## V.    STIPULATIONS AND UNCONTESTED FACTS

A.    **Stipulations**

1.    The parties request that the Court present the Federal Judicial Center's tutorial video regarding the U.S. Patent Office.

2.    The parties have otherwise provided their proposed trial management procedures in Section VI below.

B.    **Uncontested Facts**

1.    U.S. Patent No. 7,230,931 (the "'931 Patent") issued on June 12, 2007, from an application filed on September 5, 2001.

2.    Cellco Partnership d/b/a Verizon Wireless ("Verizon Wireless") is a Delaware partnership with its principal place of business at One Verizon Way, Basking Ridge, New Jersey.

3.    Verizon Services Corp. ("VSC") is a Delaware corporation with its principal place of business at One Verizon Way, Basking Ridge, New Jersey.

4.    Verizon Business Global, LLC ("VBG") is a Delaware limited liability company with its principal place of business at One Verizon Way, Basking Ridge, New Jersey.

5.    Verizon Business Network Services, LLC ("VBNS") is a Delaware limited liability company with its principal place of business at One Verizon Way, Basking Ridge, New Jersey.

6.    Verizon Corporate Services Group Inc. ("VCSG") is a New York corporation with its principal place of business at One Verizon Way, Basking Ridge, New Jersey.

7.    Verizon Data Services, LLC ("VDS") is a Delaware limited liability company with its principal place of business at One East Telecom Parkway, B3E, Temple Terrace, Florida.

8.    Verizon Online, LLC ("VO") is a Delaware limited liability company with its principal place of business at 22001 Loudoun County Parkway, Ashburn, Virginia.

9.      The '931 Patent is titled "entitled "Wireless Access System Using Selectively Adaptable Beam Forming in TDD Frames and Method of Operation." It claims priority to a provisional application dated Jan 19, 2001, and was issued by the United States Patent and Trademark Office ("PTO") on June 12, 2007. The '931 Patent will expire on August 24, 2024.

10.     U.S. Patent No. 9,426,794 (the "'794 Patent") was issued by the PTO on August 23, 2016, from an application filed on June 4, 2012, which was a continuation of an application filed on October 31, 2007, now abandoned, which was a continuation of an application filed on April 20, 2001. The '794 Patent is entitled "Wireless Communication System and Device for Coupling a Base Station and Mobile Stations." The '794 Patent expired on June 23, 2021.

12.     The named inventor listed on the '931 Patent and '794 Patent is Paul F. Struhsaker.

15.     General Access filed this action on October 10, 2022.

## VI.    Trial Management Procedures

### A.    Testimony

1.      <u>Witness Identification</u>. The parties will identify by email to the opposing party the witnesses they intend to call and the order by which they expect to call the witnesses by 7:00 p.m. two calendar days before the witnesses will be called to testify. The identification of the witnesses shall include both live witnesses and witnesses whose testimony is provided by deposition. Any objection to the witness must be made by 8:00 p.m. two nights before the intended testimony. The parties will exchange on June 10, 2024 (or two weeks before jury selection) a list of the witnesses the parties then believe in good faith they will actually call live.

2.      <u>Deposition Testimony</u>. Unless otherwise agreed between the parties, the party offering deposition testimony (other than for impeachment purposes) shall identify the deposition testimony to be offered from previously exchanged designations by 7:00 p.m. at least three calendar

days prior to the testimony being offered into the record. The party receiving the designations shall inform the opposing party of any counter-designations and objections by 7:00 p.m. two days prior to the testimony being offered into the record, and the parties will meet and confer by 9:00 p.m. that same day. Any unresolved objections must be emailed to the Court's law clerks, along with a copy of the relevant portions of the deposition transcript, by 10:00 p.m. two nights before the deposition will be played, to permit the Parties to address any such objections with the Court the next morning (i.e., the day before the testimony is to be played).

3. <u>Deposition Exhibits</u>. If an exhibit was actually used during a deposition and appears on the joint exhibit list or a party's exhibit list, and if a party seeks to present the deposition testimony about that same exhibit during the examination of any witness appearing by deposition designation, the parties will meet and confer to discuss the use of said exhibit, including any remaining objections for that exhibit. The parties may not use deposition testimony to expand the number of exhibits beyond those appearing on the exhibit lists.

4. <u>Deposition Testimony Chronology</u>. All designations and counter-designations will be read or played in the order in which the testimony occurred in the deposition unless another order is agreed to by the parties or ordered by the Court. [Counter-designations in this context are limited only to those parts of a deposition that an adverse party may require the offeror to introduce because, in fairness, they should be considered with the part introduced. *See* Fed. R. Civ. P. 32(a)(6). An adverse party has no right to require that parts of a deposition outside that limited scope be played during the other party's case. This limitation does not prevent the parties from mutually agreeing to play other parts of a deposition even if it is outside the scope of a counter-designation.]

5. <u>Deposition Testimony Preparation</u>. [To the extent possible,] all colloquy between counsel and objections will be eliminated when deposition testimony is presented at trial [unless it is

necessary context for the witness's answer, with prior approval of the Court].[8]  The party introducing the deposition testimony shall be responsible for editing the deposition video to include the testimony and any counter-designation testimony, removing any attorney objections, and providing a timed report of deposition designations for each party (i.e., initial and counter-designations) prior to the designations being played at trial. The introducing party shall provide the edited video clip to the opposing party as soon as practicable but no later than 8:00 p.m. the night before the deposition is to be played. Each party reserves the right to use deposition designations from the other party's designations, even if not separately listed on its own list.

6.    Reservation of Rights. Each party also reserves the right to use deposition counter designations as part of its affirmative designations, and any initial or counter-counter designations as counter designations.

7.    Deposition Testimony Time. Only the deposition testimony designated by each party will be subtracted from that party's trial time. The other party's responsive designations shall be deducted from that party's trial time (i.e., affirmative designations will be deducted from the designating party's trial time and counter-designations will be subtracted from the counter-designating party's trial time).

8.    Impeachment. Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party specifically identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose. Deposition testimony used for impeachment purposes does not need to be disclosed prior to its use. When a

---

[8] While General Access generally agrees that colloquy between counsel, and objections, will be eliminated from the deposition designations, there may be some rare instances where additional context is necessary to understand the witness's testimony. In those rare instances, General Access maintains that the parties should be permitted to play such materials with the Court's prior approval.

party uses deposition testimony for impeachment, the party may elect to either play the deposition testimony by video or to read the deposition testimony live (in either case the transcript may be displayed to the jury), unless the Court orders otherwise.

9.      <u>Interrogatories, Requests for Admission, and Stipulations</u>. The Parties agree that written answers to interrogatories, requests for admission, or stipulations in this case shall be treated as having been given under oath, whether or not the answers were signed or verified by the party making them. The parties otherwise do not waive any rights or objections with respect to such evidence.

**B.      Exhibits**

1.      <u>Pre-Admitted Exhibits</u>. Each party may use an exhibit that is preadmitted, whether it is listed on the joint exhibit list or on either party's exhibit list.

2.      <u>Objections to Exhibits</u>. A party's inclusion of an exhibit on its exhibit list does not waive any evidentiary or other objections to that exhibit if the opposing party attempts to offer it into evidence.

3.      <u>Disclosure of Exhibits for Opening Statements</u>. The parties agree that any exhibit pre-admitted at the time of opening statements may be shown to the jury during opening statements, if the exhibit will be admitted and used during trial. The parties will identify any pre-admitted exhibit that will be shown to the jury during opening statements by 5:00 p.m.[9] the day before Opening Statements.

4.      <u>Disclosure of Exhibits for Direct Examination.</u> Each party will provide a list of trial exhibits to be used in connection with direct examination of each witness whether live or by designation, on witness-by-witness basis, by 7:00 p.m. the night before their intended use. The

---

[9] All listed times are Central Time.

24

parties will exchange objections to exhibits (to the extent the exhibit is not pre-admitted or objections are not resolved at the pretrial conference) by 8:00 p.m. on the same day, the night before their intended use. The parties will provide a joint email to the Court on any remaining disputes by 10:00 p.m. Any exhibits to be used during cross-examination or examination of a witness a party calls adversely need not be disclosed under this provision.

5.      <u>Demonstratives</u>. The parties agree that the demonstratives the parties intend to use at trial do not need to be included on their respective trial exhibit lists, but instead, will be subject to the applicable procedures set forth below.

6.      <u>Exhibit List Descriptions</u>. The parties agree that any description of an exhibit on an exhibit list is provided for convenience only and shall not be used as an admission by the applicable party, or otherwise as evidence regarding that exhibit.

7.      <u>Dates Listed on Exhibit List</u>. The parties agree that any date listed on the exhibit list is not evidence or an admission of the exhibit's date. The parties further agree that failing to list a date is not evidence or an admission of whether the document is dated.

8.      <u>Physical Exhibits</u>. Any physical exhibits may be inspected by the other party. Any such physical exhibits must be made available for inspection at a mutually convenient time and place in advance of the pretrial conference, again (if requested) at least 48 hours before the beginning of trial, and again (if requested) no later than 7:00 p.m. the night before their intended use at trial.

9.      |<u>Source Code and Confidential Material</u>. The parties anticipate that additional highly confidential and competitively sensitive information, including source code and financial data (including revenue data), and license information will be presented at trial. The parties agree that, as a general rule, each party's corporate representative may remain in the courtroom during sealed portions of the trial, subject to the right of any party to make a specific request that the corporate

representatives be required to exit the courtroom for the discussion of particular matters. Each party retains the right to oppose the other party's request to seal the courtroom.]

C.    **Demonstratives**

1.    <u>Demonstratives</u>. "Demonstratives" are documents and materials specifically created for the purpose of the trial for illustrative purposes, and do not include (1) demonstratives created in the courtroom during testimony or opening at trial (such as by writing on a white board or flip chart); or (2) the enlargement, highlighting, ballooning, underlining, or the like, of preadmitted exhibits or transcripts of trial testimony, or transcripts of deposition testimony for which objections have been cleared. "Demonstratives" includes non-documentary things, such as physical items that are not admitted into evidence.

2.    <u>Disclosure of Demonstratives for Opening Statements</u>. Absent further agreement of the parties, the parties will exchange Demonstratives for use in opening statements by 5:00 p.m. on the day before openings (except for physical demonstratives, including live demonstrations thereof, which shall be disclosed by 5:00 p.m. two nights before opening statements). The parties will provide any objections to the Demonstratives by 6:00 p.m. on the day before openings. The parties will meet and confer on any objections to the Demonstratives by 7:00 p.m. on the day before openings. The parties will provide a joint email to the Court on any remaining disputes by 8:00 p.m. on the day before openings.

11.    <u>Disclosure of Demonstratives for Use in Direct Examinations</u>. Absent further agreement of the parties, the parties will provide Demonstratives for use in direct examinations of their own witnesses by 7:00 p.m. the night before their intended use (except for physical demonstratives, including live demonstrations thereof, which shall be disclosed by 7:00 p.m. two nights before their intended use). The parties will provide any objections to such Demonstratives by

26

8:00 p.m. the night before their intended use. The parties will meet and confer by 9:00 p.m. The

parties will provide a joint email to the Court on any remaining disputes by 10:00 p.m.

12.      [Disclosure of Demonstratives for Closing Arguments. Should closing arguments

take place the next business day after evidence closes, the parties shall exchange any newly created or

modified Demonstratives for use in closing argument by 8:00 p.m. the night before closings are

held, objections will be raised by 9:00 p.m. the same day, and the parties will notify the Court of any

remaining objections by 10:00 p.m. Should closing arguments take place on the same day that

evidence closes, the parties agree to discuss a time to exchange demonstratives, which shall be at

least 2 hours before closing arguments begin. In no event will newly created or modified

demonstratives be used in closing arguments that have not been provided to the other party.

Excerpts of trial testimony do not constitute newly created Demonstratives under this provision.]

13.      File Types for Demonstrative Disclosures. For videos or animations, the Party

seeking to use the demonstrative shall provide to the other side a PDF file or other file type,

showing the stages of the animation that shows the build across the animation. If a PDF version of

the file is not adequate to reasonably show the build, presentation, and content of the demonstrative,

another file type that does so shall be used, such as an executable. The parties will exchange color

representations of such non-documentary and/or live demonstratives. Demonstratives exchanged

will not be used by an opposing party before being used by the disclosing party. A party who has a

demonstrative created in the courtroom must provide the other party with a photograph of the

demonstrative by 7:00 p.m. the same day.

14.      Edits and Corrections to Demonstrative Disclosures. Reasonable, non-substantive

edits or corrections of typographical and similar errors may be made after the disclosure deadlines

set forth above provided that the corrected Demonstrative must be promptly disclosed reasonably in advance of its first use.

15.    <u>Disclosure of Demonstratives for Cross-Examination</u>. The parties agree that they need not identify trial exhibits or provide a copy of demonstratives to be used during cross-examination or a party's examination of a witness that it calls adversely.

16.    <u>Objections to Demonstratives</u>. The parties will meet and confer to resolve objections at 9:00 p.m. after the trial disclosures and objections contained in the preceding subsections have been exchanged that evening. Any unresolved objections will be raised with the Court by email directed to the Court's law clerk(s) no later than 10:00 p.m. for resolution the next morning outside the presence of the jury. If there are no objections, the parties shall so inform the Court.

## D.    Witness Binders and Juror Notebooks

1.    <u>Witness Binders</u>. The parties agree that there is no requirement to prepare a binder of evidence or demonstratives for a witness; however, if a party provides a binder to a witness, the party will provide at the same time at least one copy to the opposing side and the Court, and court reporter.

## E.    Notice of Intent to Rest

1.    <u>Notice of Intent to Rest</u>. A party will provide to the Court and the other party a good-faith notice that it expects to rest by 7:00 p.m. or prior to leaving court, whichever is later, the day before that party expects to rest and provide a good-faith estimate of how much additional trial time the party expects to use before resting.

## VII.    CONTESTED ISSUES OF FACT AND LAW

The parties identify the following issues of fact and law that remain to be litigated. To the extent any issue of law discussed below is deemed to be an issue of fact, it is expressly designated as

such, and vice versa. The parties do not waive any of their pending or anticipated motions, and each party incorporates by reference the contested issues raised in its respective pending motions. The parties reserve the right to identify additional factual or legal issues that may arise, including issues raised in any motions in limine.

### A.    Plaintiff's Statement of its Contested Issues of Fact and Law

1.    Whether the Asserted Claims are infringed, literally and/or under the doctrine of equivalents.

2.    Whether the Asserted Claims are valid under 35 U.S.C. §§ 103, and 112.

3.    Whether the Asserted Claims are patent eligible under 35 U.S.C. § 101 or invalid for obviousness-type double patenting.

4.    If the Asserted Patents are infringed and not invalid, the amount of damages to which General Access is entitled, including any pre-judgment or post-judgment interest.

5.    If Defendants are found to have willfully infringed the '931 Patent, whether the Court should enhance damages under 35 U.S.C. § 284 and, if it does, the extent of that increase.

6.    Whether this is an exceptional case under 35 U.S.C. § 285.

7.    If this is an exceptional case under 35 U.S.C. § 285, whether costs, expenses, and/or attorneys' fees should be awarded to General Access and, if so, in what amount.

### B.    Defendants' Statement of its Contested Issues of Fact and Law

1.    Whether Verizon has infringed Asserted Claims 28 and 29 of the '931 Patent.

2.    Whether Ericsson's products infringe asserted claims 28 and 29 of the '931 patent.

3.      Whether Asserted Claims 28 and 29 of the '931 Patent are patent-ineligible under 35 U.S.C. § 101.[10]

3.      Whether Asserted Claims 28 and 29 of the '931 Patent are invalid as obvious under 35 U.S.C. § 103.

4.      Whether Asserted Claims 28 and 29 of the '931 Patent are invalid for obviousness-type double patenting in view of U.S. Patent No. 10,820,312 or the '312 patent in combination with Forssén.[11]

5.      Whether Asserted Claims 28 and 29 of the '931 Patent are invalid for lack of enablement under 35 U.S.C. § 112.

6.      Whether Asserted Claims 28 and 29 of the '931 Patent are invalid for lack of adequate written description under 35 U.S.C. § 112.

7.      Whether Plaintiff is entitled to a priority date earlier than September 5, 2001, the filing date of the application that issued as the '931 Patent.

8.      If infringement is found for the Asserted Claims of the '931 Patent and the infringed claims are found to be not patent-ineligible under 35 U.S.C. § 101, not invalid under 35 U.S.C. §§ 103 and 112, and not invalid for obviousness-type double patenting in view of U.S. Patent No.

---

[10] **Verizon's Statement:** As explained above, patent eligibility should be decided in a bench trial outside the presence of the jury, after the jury trial concludes"

**General Access's Statement:** Without agreeing to the timing of when Defendants are required to raise this defense, General Access agrees that patent eligibility under Section 101 should not be presented to the jury, as reflected in the proposed jury instructions, which do not include the issue. To the extent that the Court will entertain this issue, it can be addressed in the context of Rule 50 motions.

[11] **Verizon and Ericsson's Statement:** As explained above, obviousness-type double patenting should be decided in a bench trial outside the presence of the jury, after the jury trial concludes.

10,820,312 or the '312 patent in combination with Forssén, the amount of any damages to which Plaintiff is entitled from Defendants.

9.      If infringement is found for the Asserted Claims of the '931 Patent and the infringed claims are found to be not patent-ineligible under 35 U.S.C. § 101, not invalid under 35 U.S.C. §§ 103 and 112, and not invalid for obviousness-type double patenting in view of U.S. Patent No. 10,820,312 or the '312 patent in combination with Forssén, whether Plaintiff is entitled to pre-judgment or post-judgment interest and, if so, in what amount.

10.     With respect to the '931 Patent, whether Plaintiff is entitled to its costs, expenses, and attorneys' fees pursuant to 35 U.S.C. § 285.

11.     With respect to the '931 Patent, whether Defendants are entitled to their costs, expenses, and attorneys' fees pursuant to 35 U.S.C. § 285.

12.     Whether Verizon has infringed Asserted Claims 1, 2, and 5 of the '794 patent.

13.     Whether Asserted Claims 1, 2, and 5 of the '794 patent are patent-ineligible under 35 U.S.C. § 101.[12]

14.     Whether Asserted Claims 1, 2, and 5 of the '794 patent are invalid as obvious under 35 U.S.C. § 103.

15.     Whether Asserted Claims 1, 2, and 5 of the '794 patent are invalid for obviousness-type double patenting in view of U.S. Patent No. 9,379,916.[13]

16.     Whether Asserted Claims 1, 2, and 5 of the '794 patent are invalid for lack of enablement under 35 U.S.C. § 112.

---

[12] Verizon incorporates its statement concerning patent eligibility under 35 U.S.C. § 101 from the above footnote, which equally applies to the asserted '794 patent claims.

[13] Verizon and Ericsson incorporate their statement concerning obviousness-type double patenting from the above footnote, which equally applies to the asserted '794 patent claims

17.    Whether Asserted Claims 1, 2, and 5 of the '794 patent are invalid for lack of adequate written description under 35 U.S.C. § 112.

18.    If infringement is found for the Asserted Claims of the '794 patent and the infringed claims are found to be not patent-ineligible under 35 U.S.C. § 101, not invalid under 35 U.S.C. §§ 103 and 112, and not invalid for obviousness-type double patenting in view of U.S. Patent No. 9,379,916, the amount of any damages to which Plaintiff is entitled from Defendants.

19.    If infringement is found for the Asserted Claims of the '794 patent and the infringed claims are found to be not patent-ineligible under 35 U.S.C. § 101, not invalid under 35 U.S.C. §§ 103 and 112, and not invalid for obviousness-type double patenting in view of U.S. Patent No. 9,379,916, whether Plaintiff is entitled to pre-judgment or post-judgment interest and, if so, in what amount.

20.    With respect to the '794 patent, whether Plaintiff is entitled to its costs, expenses, and attorneys' fees pursuant to 35 U.S.C. § 285.

21.    With respect to the '794 patent, whether Defendants are entitled to their costs, expenses, and attorneys' fees pursuant to 35 U.S.C. § 285.

22.    Whether any infringement has been willful, including whether General Access provided pre-suit notice of the Asserted Patents.

23.    Whether Plaintiff can pursue an infringement theory as to the '931 Patent under the doctrine of equivalents.

## VIII.    LIST OF WITNESSES

1.    General Access's trial witness list is attached as Exhibit A.

2.    Defendants' trial witness list is attached as Exhibit B.

## IX.    EXHIBIT LISTS

1.      General Access's exhibit list (with Defendants' objections) is attached as Exhibit C.

2.      Defendants' exhibit list (with General Access's objections) is attached as Exhibit D.

3.      The Parties' Joint Exhibit List (with each parties' objections) is attached as Exhibit E.

## X.      DEPOSITION DESIGNATIONS[14]

1.      General Access's deposition designations, along with respective rebuttal

designations, reply designations, and objections, are attached as Exhibit F.

2.      Defendants' deposition designations, along with respective rebuttal designations,

reply designations, and objections, are attached as Exhibit G.

## XI.     JURY INSTRUCTIONS AND VERDICT FORM

1.      The Parties' Proposed Preliminary Jury Instructions are attached as Exhibit H.

2.      The Parties' Proposed Final Jury Instructions are attached as Exhibit I.

3.      General Access's Proposed Verdict Form is attached as Exhibit J.

4.      Defendant's Proposed Verdict Form is attached as Exhibit K.

## XII.    LIST OF PENDING MOTIONS

### A.      Plaintiff's Pending Motions

| Dkt. No. | Date | Motion |
|---|---|---|
| 125 | 3/25/24 | Plaintiff's Motion to Preclude Expert Testimony by John Grabner and Mark Goode |
| 126 | 3/25/24 | Plaintiff's Motion to Exclude Evidence of Ericsson's "Simulation Study" Pursuant to Rule37(c) |
| 128 | 3/25/24 | Plaintiff's Motion to Strike Portions of Dr. Andrews' Reports |
| 134 | 3/25/24 | Plaintiff's Motion to Strike Portions of Mr. Bakewell's Report |
| 194 | 4/29/24 | Plaintiff's Motions *in Limine* |

---

[14] On May 15, 2024, counsel for General Access notified counsel for Defendants for the first time that "due to the uncertainty around the trial schedule and his other obligations, [] there is a possibility that Paul Struhsaker may not be able to testify live at trial." Counsel for General Access requested that the parties exchange deposition designations for Mr. Struhsaker "as soon as possible." 2024-05-15 Email from N. Knobloch to Counsel. The parties will thus submit revised deposition designations that include Mr. Struhsaker before trial.

### B.    Defendants' Pending Motions

| Dkt. No. | Date | Motion |
|---|---|---|
| 89 | 1/19/24 | Verizon's Opposed Motion to Stay Pending Resolution of *Inter Partes* Review for All Asserted Claims |
| 127 | 3/25/24 | Defendants' Motion for Partial Summary Judgment of Invalidity of U.S. Patent No. 7,230,931 for Lack of Written Description |
| 129 | 3/25/24 | Defendant Verizon's and Intervenor Ericsson's *Daubert* Motion and Motion to Strike the Opinions of David Kennedy |
| 130 | 3/25/24 | Defendants' *Daubert* Motion and Motion to Strike Certain Opinions of Dr. Madisetti |
| 131 | 3/25/24 | Defendants' Motion for Summary Judgment of Judicial Estoppel and Collateral Estoppel |
| 132 | 3/25/24 | Defendants' Motion for Partial Summary Judgment of Invalidity of U.S. Patent No. 9,426,794 for Lack of Written Description |
| 133 | 3/25/24 | Verizon's Motion for Partial Summary Judgment of Noninfringement and Invalidity of U.S. Patent No. 9,426,794 |
| 135 | 3/25/24 | Defendants' Motion for Partial Summary Judgment of Non-Infringement Under the Doctrine of Equivalents |
| 193 | 4/29/24 | Defendants' Motions *In Limine* |

## XII.   LENGTH OF TRIAL

The parties request [11 / 15] hours per side for direct, cross, and rebuttal examination. The parties further request 30 minutes per side for voir dire sessions, 30 minutes per side for opening statements, and 40 minutes per side for closing arguments.

## XIII.   MANAGEMENT CONFERENCE

The parties request that their respective pending motions and objections to exhibits and witnesses be heard at the final pretrial conference, as they would directly impact trial.

Verizon and Ericsson also request that General Access be required to disclose which of its witnesses will be appearing live at trial by the pre-trial conference.  To date, General Access has served trial witness lists that indicate that its two key fact witnesses and potential corporate representatives, Mr. Paul Struhsaker and Michael "Skip" Hynek, are "may calls" either live or by deposition.  In email correspondence, General Access has indicated that both witnesses may not be available at trial and has asked that the parties exchange deposition designations.  General Access's

inability to identify who it will bring to trial, including its own corporate representative, is prejudicing Verizon and Ericsson's ability meaningfully prepare for trial.

## XIV.   CERTIFICATIONS

The undersigned counsel for each of the parties in this action does hereby certify and acknowledge the following:

1.      Full and complete disclosure has been made in accordance with the Federal Rules of Civil Procedure and the Court's orders;

2.      Discovery limitations set forth in the Federal Rules of Civil Procedure, the Local Rules, and the Court's orders have been complied with;

3.      Each exhibit in the List of Exhibits herein:

  A.     is in existence;

  B.     is numbered; and

  C.     has been disclosed and shown to opposing counsel.

Approved as to form and substance:


Attorneys for Plaintiff:        _/s/ Glen E. Summers_____


Attorneys for Verizon:        _/s/ Kaherine Q. Domingues_____


Attorneys for Ericsson:        _/s/ Douglas M. Kubehl_____

Dated: May 20, 2024                    Respectfully submitted,

_/s/ Glen E. Summers_
Glen E. Summers (CO Bar No. 30635)
LEAD ATTORNEY
Nosson D. Knobloch (CO Bar No. 42134)
Giovanni J. Sanchez (CO Bar No. 59696)
Taylor Kelson (CO Bar No. 56910)
**BARTLIT BECK LLP**
1801 Wewatta Street, Suite 1200
Denver, CO 80202
Telephone: (303) 592-3100
Facsimile:   (303) 592-
glen.summers@bartlitbeck.com
nosson.knobloch@bartlitbeck.com
giovanni.sanchez@bartlitbeck.com
**taylor.kelson@bartlitbeck.com**

Michael J. Valaik (IL Bar No. 6276086)
**BARTLIT BECK LLP**
54 West Hubbard Street, Suite 300
Chicago, IL 60654
Telephone: (312) 494-4400
michael.valaik@bartlitbeck.com

T. John Ward (TX Bar No. 00794818)
Charles Everingham IV (TX Bar No. 00794818)
Andrea L. Fair (TX Bar No. 24078488)
**WARD SMITH & HILL, PLLC**
1507 Bill Owens Pkwy.
Longview, Texas 75604
Telephone: (903) 757-6400
jw@wsfirm.com
ce@wsfirm.com
andrea@wsfirm.com

Amy J. Wildermuth (IL Bar No. 6256999)
17811 Comstock Road
Wayzata, MN 55391
Telephone: (801) 913-4068
amy.wildermuth@gmail.com

_Attorneys for Plaintiff General Access Solutions, Ltd._

36

Dated: May 20, 2024

_/s/ Katherine Q. Dominguez_

Katherine Q. Dominguez (lead attorney)
(NY Bar No. 4741237)
kdominguez@gibsondunn.com
Josh A. Krevitt (NY Bar No. 2568228)
jkrevitt@gibsondunn.com
Brian A. Rosenthal (NY Bar No. 3961380)
brosenthal@gibsondunn.com
Sung Bin Lee (NY Bar No. 5701099)
slee3@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Jaysen S. Chung (CA Bar No. 280708)
jschung@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8271
Facsimile: (415) 374-8405

Andrew W. Robb (CA Bar No. 291438)
arobb@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
310 University Avenue
Palo Alto, CA 94301
Telephone: (650) 849-5334
Facsimile: (650) 849-5034

Ashbey N. Morgan (TX Bar No. 24106339)
anmorgan@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**

2001 Ross Avenue, Suite 2100
Dallas, TX 75201
Telephone:  (214) 698-3112
Facsimile:   (214) 571-2910

**Deron R. Dacus (TX Bar No. 00790553)**
ddacus@dacusfirm.com
**THE DACUS FIRM, P.C.**
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Telephone:  (903)705-1117

*Attorneys for Verizon*

Dated: May 20, 2024

*/s/ Douglas M. Kubehl*

Douglas M. Kubehl (lead attorney)
  Texas State Bar No. 00796909
  E-mail:
doug.kubehl@bakerbotts.com
Jeffery S. Becker
  Texas State Bar No. 24069354
E-mail:   jeff.becker@bakerbotts.com
Melissa L. Muenks
  Texas State Bar No. 24097442
  E-mail:
melissa.muenks@bakerbotts.com
Griffin R. Tolle
  Texas State Bar No. 24115349
  E-mail: griffin.tolle@bakerbotts.com
**Baker Botts L.L.P.**
2001 Ross Avenue
Dallas, Texas 75201
Telephone: (214) 953-6500
Facsimile:   (214) 953-6503

*Attorneys for Ericsson*

38

## CERTIFICATE OF SERVICE

Pursuant to Federal Rules of Civil Procedure and Local Rule CV-5, I hereby certify that a copy of the foregoing document was filed via the Court's CM/ECF system on May 20, 2024, which will send a notification of such filing to all counsel of record.

*/s/ Glen Summers*
Glen E. Summers