# EXHIBIT H

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., <br><br> Plaintiff, <br><br> v. <br><br> CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON SERVICES CORP., VERIZON BUSINESS GLOBAL LLC, VERIZON BUSINESS NETWORK SERVICES LLC, VERIZON CORPORATE SERVICES GROUP INC., VERIZON DATA SERVICES LLC, and VERIZON ONLINE LLC, <br><br> Defendants, <br><br> ERICSSON INC., <br><br> Intervenor-Defendant. | C.A. No. 2:22-394-JRG <br><br> **JURY TRIAL DEMANDED** |

**[PROPOSED] PRELIMINARY JURY INSTRUCTIONS**[1]

---

[1] Submissions that are agreed to by both General Access and Verizon and Ericsson are not highlighted.

Submissions proposed by General Access that are not agreed to by Verizon and Ericsson are bracketed and highlighted in <mark>teal</mark>. Submissions proposed by Verizon and Ericsson that are not agreed to by General Access are bracketed and highlighted in <mark>yellow</mark>.

The parties have filed motions for summary judgment, *Daubert* motions, and motions *in limine* on many issues in this case. The outcomes of these pending motions may affect portions of these instructions and the parties' proposals. The parties reserve the right to amend these instructions and proposals prior to the Court's charge conference, and nothing within these proposed instructions should be construed as a waiver of the parties' positions, arguments, or objections to the proposed instructions.

## INTRODUCTION[2]

Ladies and gentlemen of the jury, I now have some preliminary instructions that I want to give you on the record and before we start with opening statements from the lawyers and then move on to the evidence in the case.

You have now been sworn as the jurors in this case, and as the jury, you are the sole judges of the facts.  As such, you will decide and determine what all the facts are in this case.

As the judge, I will give you instructions on the law, decide questions of law that arise during the course of the trial, handle any matters that arise regarding evidence, as well as manage the efficient flow of the evidence and maintain the decorum of the courtroom.

At the end of the evidence, I will give you detailed instructions on the law to apply in deciding this case, and I will give you a list of questions that you are then to answer.  This list of questions is called the verdict form.  Your answers to those questions will need to be unanimous, and those unanimous answers to those questions will constitute the jury's verdict in this case.

## PATENTS AND HOW THEY ARE OBTAINED

Let me briefly tell you what this case is about.  This case involves a dispute regarding two United States patents.  I know that you have each seen the patent video prepared by the Federal Judicial Center, but I need to give you some additional instructions now and on the record about a patent and how one is obtained.

Patents are granted or denied by the United States Patent and Trademark Office, which you will often hear referred to simply as the PTO. A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application is filed to prevent others from making,

---

[2] **General Access's Statement**: It is General Access's understanding that the Court prefers the parties not submit preliminary jury instructions. General Access conferred with Defendants on this matter, but they insisted on submitting proposed preliminary jury instructions. To preserve its rights, General Access joins this submission.

using, offering to sell, or selling the patented invention within the United States or from importing it into the United States without the patent holder's permission.

A patent is a form of property called intellectual property and, like other forms of property, a patent can be bought or sold.

A violation of the patent holder's rights is called infringement. A patent holder may try to enforce a patent against persons it believes to be infringers by filing a lawsuit in a United States District Court, and that is what we have before us in this case.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one first must file an application with the United States Patent and Trademark Office, the PTO. The PTO is an agency of the United States government [It is actually a part of the U.S. Department of Commerce, and it employs trained examiners who review applications for patents] [that employs trained examiners who review applications for patents.]

The application filed with the PTO includes within it something called a specification. The specification should contain a written description of the claimed invention, telling what the invention is, how it works, how to make it, and how to use it. The specification concludes or ends with one or more numbered sentences. These numbered sentences at the end of the patent are called the patent claims. When a patent is granted by the PTO, the claims define the boundaries of the patent's protection and give notice to the public of those boundaries.

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent patent claim does not refer to any other claim in the patent. It stands alone. It is independent. It is not necessary to look at any other claim to determine what an independent claim covers.

On the other hand, a dependent claim refers to at least one other claim within the patent. A dependent claim includes each of the elements or limitations of that other claim or claim to which it

refers or, as we sometimes say, from which it depends, as well as the additional elements or limitations recited within the dependent claim itself. Therefore, to determine what a dependent patent claim covers, it is necessary to look at both the dependent claim itself and the independent claim or claims from which it refers or from which it depends.

The claims of the Patents-in-Suit use the word "comprising." Comprising means including or containing. A claim that includes the word "comprising" is not limited to the methods or devices having only the elements that are recited in the claim, but also covers methods or devices that include additional elements.

Take, for example, a claim that covers a table. If that claim recites a table comprising a table top, legs, and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as leaves to expand the size of the table top or wheels to go on the ends of the legs. That is a very simple example using the word "comprising" and what it means. In other words, it can have other features in addition to those that are actually covered by the patent.

After the applicant files their application with the PTO, the PTO assigns an examiner and the examiner reviews the application to determine whether or not the claims are patentable—that is to say, appropriate for patent protection, and whether or not the specification adequately describes the invention claimed. In examining the patent application, the examiner reviews certain other information about the state of the technology at the time the application is filed. The PTO searches for and reviews this type of information that is publicly available or that was submitted by the applicant. This type of information is called prior art. The examiner reviews this prior art to determine whether or not the invention claimed is truly an advance over the state of the art at the time.

Prior art is defined by law, and I will give you specific instructions at a later time as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of the technology that existed before the claimed invention was made or before the application for a

patent was filed.  A patent contains within it a certain list of prior art that the examiner has considered. The items on this list are called the cited references.

After the prior art search and the examination of the application, the examiner informs the applicant in writing of what the examiner has found and whether the examiner considers any claim to be patentable and, thus, it would be allowed.  This writing from the examiner is called an office action. If the examiner rejects the claims, the applicant has an opportunity to respond to the examiner to try to persuade the examiner to allow the claims.  The applicant also has a chance to change or amend the claims or to submit new claims.

The papers generated in this back-and-forth between the examiner and the applicant are called the prosecution history.  This process between the examiner and the applicant may go back and forth for some time until the examiner is satisfied that the application meets the requirements for a patent, and in that case the application issues as a United States patent, or, in the alternative, if the examiner ultimately concludes that the application should be rejected, then no patent is issued.  Sometimes patents are issued after appeals within the PTO or to a court.

[The fact that the Patent Office grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. While an issued United States patent is presumed to be valid under the law, a person accused of infringement has the right to assert and to prove in federal court that the claimed invention in a patent is invalid.

It is your job as the jury to consider the evidence presented by the parties and to determine independently and for yourselves whether or not the Defendant has proven by clear and convincing evidence that any asserted claim of a patent is invalid.]

## CONTENTIONS OF THE PARTIES

To help you follow the evidence, I will now give you a brief summary of the positions of the parties.

As you know, the party that brings the lawsuit is called the plaintiff.  The plaintiff in this case is called General Access Solutions, Ltd., which you may hear referred to throughout the trial as either "General Access" or "Plaintiff."

As you are also aware, the party against whom a lawsuit is brought is called the defendant.  In this case we have more than one defendant.  The defendant entities in this case are Cellco Partnership d/b/a Verizon Wireless, Verizon Services Corp., Verizon Business, Global LLC, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., Verizon Data Services LLC, and Verizon Online LLC—which may be referred to collectively as "Verizon" or "Defendant."

[Now, after this lawsuit was filed, Ericsson Inc., who you may hear to referred to as simply "Ericsson," joined the case on the same side as Verizon. As I mentioned, technically Ericsson is called an Intervenor in this case because they intervened or joined the case after it was filed.  But for the purposes of this trial, ladies and gentlemen, Ericsson and Verizon are in the same posture and, practically speaking, you may even hear people refer to them together as Defendants during the trial. Technically, we have a Defendant and an Intervenor, but they are standing shoulder to shoulder and in the same position in this case, and it is important for you to consider it in that fashion.] [A manufacturer has a right to protect its customers, either as a matter of contract, or good business, or in order to avoid any potentially damaging impact of an adverse ruling against its product. Verizon is a customer of Ericsson, Inc., who you may hear referred to as simply "Ericsson." Plaintiff accuses Verizon of infringing the Asserted Claims of the '931 Patent in part by using Ericsson products. However, Plaintiff did not sue Ericsson for infringement and it makes no claim of infringement against Ericsson in this case. As a result, Ericsson sought permission to and was granted permission to intervene into this case to defend its products as used by Verizon. Ericsson Inc. by itself is referred to as an Intervenor in this case.]

As I told you during jury selection, this case is a case of alleged patent infringement. As I may have already told you, there are two separate United States patents that have been asserted in this case. The first patent is United States Patent No. 7,230,931, and, as you should know, patents are commonly referred to by their last three digits of the patent number. So in this case, U.S. Patent No. 7,230,931 will be referred to throughout the trial as the '931 patent. The second United States patent at issue in this case is United States Patent No. 9,426,794. You will hear this patent referred to throughout the trial as the '794 patent. You may hear the '931 and '794 patents referred to at various times during the trial collectively as the Patents-in-Suit, or you may hear them collectively referred to as the Asserted Patents.

Now, the Plaintiff in this case, General Access contends that [Defendants are] [Defendant Verizon is] infringing certain claims of the Patents-in-Suit by selling or using products that include their patented technology. [General Access contends the Defendants infringe directly and/or under what is known as the doctrine of equivalents. Defendants deny that there is any infringement of the patents-in-suit, and they contend that the Asserted Claims from the patents-in-suit are invalid.] [Defendant Verizon denies that it is infringing either of Plaintiff's patents and contends that the Asserted Claims of the Patents-in-Suit are invalid. Intervenor Ericsson contends that Verizon's use of Ericsson's products does not infringe the asserted claims of the '931 Patent and that those claims are invalid.]

I know that there are many new words and concepts that have been thrown at you today. I am going to define a lot of these words and concepts for you as we go through these instructions. The attorneys are going to discuss them in their opening statements. Then, after that, the witnesses are also going to help you through their testimony to understand these words and concepts. So please do not feel overwhelmed at this point. I promise you it will all come together as we go forward.

## INTRODUCTION TO THE ISSUES

One of your jobs in this case is to decide whether or not the Asserted Claims of the Patents-in-Suit have been infringed and whether they are invalid.  If you decide that any claim of the Patents-in-Suit has been infringed by Defendant Verizon, and is not invalid , then you will need to decide what amount of money damages should be awarded to General Access as compensation for that infringement.

My job in the case is to tell you what the law is, to handle matters and rulings on evidence and procedure, to oversee the conduct of the trial, and to maintain the decorum of the courtroom.

## CLAIM INTERPRETATION

In determining the law, it is specifically my job to determine the meaning of any of the claim language from within the Patents-in-Suit that needs interpretation or construction.  I have already determined the meanings of some of the language within the claims that are asserted in this case and come from the Patents-in-Suit.  You must accept the meanings that I give you and use those meanings when you decide whether any particular claim has or has not been infringed, and whether or not any particular claim is invalid.  You will be given a document in a few moments that will reflect those meanings or constructions that the Court has already reached.

For any claim language or claim term that I have not provided you with a definition or a construction, then you should apply in that case the plain and ordinary meaning of that term.  If I provided you, however, with a definition, you are to apply my definition to that language to those terms throughout the case.  However, my interpretation of some of the language from the Asserted Claims should not be taken by you as an indication that I have a personal opinion or any opinion at all regarding the issue of infringement or invalidity.  That issue is yours and yours alone to decide.  I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate and to reach your verdict.

## INFRINGEMENT

Now, in deciding the issues that are before you, you will be asked to consider certain specific legal rules, and I will give you an overview of those rules now.  At the conclusion of the case, I will give you much more detailed instructions.

The first issue that you will be asked to decide is whether [Defendants have] [Defendant Verizon has] infringed any of the Asserted Claims of the Patents-in-Suit.  Infringement is assessed on a claim-by-claim basis.  Plaintiff has the burden and must show by a preponderance of the evidence that a claim has been infringed.  Thus, there may be infringement as to one claim within a patent but no infringement as to another claim within that patent.

There are also a few different ways that a patent can be infringed, and I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. In general, however, a defendant may infringe an asserted patent by making, using, selling, or offering for sale within the United States, or importing into the United States, a product meeting all the requirements of a claim of the asserted patent or that practices all the required steps of a claim. [Moreover, under the doctrine of equivalents, an Accused Product infringes a claim if it contains elements or limitations corresponding to each and every element or limitation of the claim that it is equivalent to, even though not literally met by an Accused Product.] I will provide you with more detailed instructions on the requirements for infringement at the conclusion of the case.

## INVALIDITY

The second issue that you will be asked to decide is whether any of the asserted patents are invalid.  Invalidity is a defense to infringement.  Therefore, even though the United States Patent and Trademark Office has allowed the Asserted Claims and issued a patent, and even though an issued patent is presumed under the law to be valid, you, the jury, must decide whether those claims are invalid after hearing the evidence presented in this case.

Now, you may find that a patent claim is invalid for a number of reasons. For instance, a way that a claim can be found to be invalid is that it may have been obvious. Even though a claim is not shown or sufficiently described in a single piece of prior art, a claim may be invalid if it would have been obvious to a person of ordinary skill in the field of the technology of the patent at the relevant time. Now, you will need to consider a number of questions in deciding whether the invention claimed in the asserted patents is obvious, and I will provide you with more detailed instructions on these questions at the conclusion of the trial.

Another way that a claim can be found to be invalid is there may have been a lack of an adequate written description. A patent may be invalid if its specification does not describe the claimed invention in sufficient detail so that one skilled in the art can reasonably conclude that the inventor actually had possession of the full scope of the invention that they are claiming.

A claim may also be invalid for what is called a lack of enablement. A patent may be invalid if its specification does not describe the claimed invention in sufficient detail so that one skilled in the art can make or use the full scope of the that claimed invention without undue experimentation.

I will provide you with more detailed instructions on all of these questions at the conclusion of the trial.

## DAMAGES

If you decide that any claim of the Patents-in-Suit has been infringed but is not invalid, you will also need to decide what amount of money damages should be awarded to General Access to compensate it for that infringement.

A damages award must be adequate to compensate the patentholder General Access for the infringement, and in no event may a damages award be less than what the patentholder would have received if it had been paid a reasonable royalty for the use of its patent. However, the damages that you award, if any, are meant to compensate the patentholder and they are not meant to punish [the

Defendants] [Defendant Verizon].  You may not include in any damages award an additional amount as a fine or penalty above what is necessary to fully compensate the patentholder for any infringement that you have found.

Moreover, damages cannot be speculative, and Plaintiff must prove the amount of its damages for the alleged infringement by a preponderance of the evidence.  I will give you more instructions on the calculation of damages for Defendant Verizon's alleged infringement of the patents-in-suit at the conclusion of the trial, including by instructing you on the specific instructions regarding the calculation of a reasonable royalty.  However, the fact that I am instructing you about damages does not mean that Plaintiff is or is not entitled to recover damages.

## WITNESSES

Over the course of the trial, you are going to be hearing from a number of witnesses in this case, and I want you to keep an open mind while you are listening to all of the evidence from all of the witnesses and not decide any facts until you have heard all the evidence.  This is important.  While the witnesses are testifying, remember that you, the jury, will have to decide the degree of credibility and believability to allocate to each of the witnesses and the testimony that they give.

So while each of the witnesses is testifying, you should be asking yourselves things like this: Does the witness impress you as being truthful?  Does he or she have a reason not to tell the truth?  Does he or she have any personal interest in the outcome of the case?  Does the witness seem to have a good memory?  And did he or she have an opportunity and ability to observe accurately the things that they have testified about?  Also, did the witness appear to understand the questions clearly and answer them directly?  And, of course, does the witness's testimony differ from the testimony of any other witness?  And if it does, how does it differ?  These are some of the kinds of things that you should be thinking about when you are listening to each of the witnesses.

## EXPERT WITNESSES

I want to mention briefly to you the topic of expert witnesses. When knowledge of a technical subject may be helpful to you, the jury, the person who has special training and experience in that particular field, we call them an expert witness, is permitted to testify to you about his or her opinions on those technical matters. However, you are not required to accept an expert witness's or any witness's opinions at all. It is up to you to decide whether you believe the testimony of an expert witness or any witness, for that matter, and whether you see it and believe it to be correct or incorrect, or whether or not you want to believe what the witness has to say.

I expect that in this trial there will be expert witnesses testifying in support of each side of this case. But when that happens, it will be up to you, the jury, to listen to each of their qualifications. When they give you an opinion and explain the basis for that opinion, you will have to evaluate what they say, whether you believe it, and to what degree, if any, that you want to give that opinion weight. Remember, judging and evaluating the credibility and believability of each and every witness is an important part of your job as jurors.

## DEPOSITIONS

During the course of this trial, it is possible that there will be testimony from one or more witnesses that is going to be presented to you through what we call a deposition. In trials such as this, it is difficult to get every witness physically here at the same time to testify in open court. So before the trial begins, the lawyers for both sides take the depositions of the witnesses. In a deposition, a court reporter is present, the witness is present and sworn and placed under oath, just as if he or she were in open court, and then the parties through their counsel asked the witnesses questions and the witnesses answered those questions. Both the questions and the answers are transcribed and taken

down.  Often, if the deposition is videotaped, then you have a video recording of the answers to the questions and the questions themselves that the witness gives.

I also want you to understand that many, if not most, depositions go on for hours at a time, sometimes up to seven hours in length.  However, when it comes time for trial, there may only be a small portion of those questions and answers that the presenting party thinks are relevant and important for the jury to see and to hear.  So that we all do not have to listen to seven hours of testimony to hear 10 or 15 minutes' worth of testimony, the parties are entitled to splice and cut that videotape or those questions and answers so that only the relevant portions that they believe should be presented during the trial are presented to you.  That means if a video deposition witness is presented to you during this trial, you may notice places where what is presented is spliced or clipped together.  You may notice different sounding voices, for example if a different lawyer is now asking questions.  You may see small jumps in the presentation.

Do not focus on any of that.  Focus solely on the questions asked and the answers given.  But understand that those little irregularities are the difference between us listening to 10 or 15 minutes as opposed to listening to seven hours of testimony.  So it serves our purposes.  But, again, do not focus on those little inconsistencies.  If we had video deposition witnesses, simply focus on the questions asked and the answers given.  Remember, those questions asked and those answers given are all under oath just as if the witness was present and physically testified from the witness stand in open court. To the extent you can, you are directed to judge the credibility and believability of those deposition witnesses just as you would if it were a live witness presented in open court during the course of the trial.

## REDACTED EXHIBITS

Also, it is possible that some of the documents that may be presented to you over the course of the trial may have words or portions that have been blacked out or redacted.  If you see documents

that have portions blacked out or redacted, it will be because the Court has previously ordered that to be done. You should not focus on what has been redacted. You should not try to guess or speculate about what was blacked out. You should focus on the portions of the documents in those cases that you can see and read and that are presented to you through the testimony of the witnesses.

Do not be confused, do not be misdirected by what may be redacted. Do not focus on that. Focus on the text and the portions of the document that are clearly visible and that will be shown to you during the trial. Do not be misdirected by some redaction or portion that is blacked out. I do not know if that will happen, but if it does, those are the instructions that you should follow.

## OBJECTIONS

Also, during the course of the trial, it is possible that the lawyers will raise objections. And when they do, I will make rulings on those objections. It is the duty of an attorney to object in a case when the other side offers testimony or other evidence that the attorney believes is not proper under the rules of the Court, the rules of evidence, or the rules of civil procedure. Now, upon allowing the testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or effect of such evidence. As I told you before, you, the jury, are the sole judges of the credibility and believability of all the witnesses, and you, the jury, are the sole judges to determine the weight and effect to give to all of the evidence presented during the trial.

I would like to compliment both sides in this case, because prior to today, they have worked with the Court very diligently to go through many, many documents that would potentially be admitted as exhibits and used before you as a part of this trial. Through pretrial procedures and rulings that the Court has already issued, a lot of time has been saved for you and for the rest of us during this, so that when a document that the Court has determined is admissible is used before you during this trial, the lawyers will not have to offer a lengthy predicate, I will not hear argument from the other side about

it, and I will not rule on it because it has already been done. When that document is used during the trial and presented to you, you can understand that the Court has already found it to be admissible and we can avoid the time and delay that it takes to go through all that process during the course of the trial because, as I tell you, we have already done that in advance of the trial. Although you may not appreciate it as you sit there, this process has saved you many hours of sitting in those chairs and listening to disputes and debates about the admissibility of documents that the Court has already taken up and considered.

If I found something to not be admissible, it will not be shown to you during this trial. I am not quite sure you will ever fully understand, but that has saved many, many hours for you during this trial—the fact that that has already been done. I want to compliment both sides with their diligent work with the Court in doing and working through that process before the trial began today. Both sides have worked with the Court to streamline these issues, and that will save you a lot of time.

However, all that being said, it is still possible that objections will arise during the course of the trial. If I should sustain an objection to a question addressed to a witness, then you must disregard the question entirely and you may draw no inference from the wording of the question nor may you speculate about what the witness would have said if the Court had allowed them to answer the question. In other words, if I sustain an objection you should disregard the question and consider that it's never been asked in the first place. On the other hand, if I overrule an objection to a question addressed to a witness, then you should consider the question and the answer just as if no objection had been made.

By allowing the testimony or other evidence to be introduced over the objection of an attorney, the Court does not express any opinion or indicate any amount of weight with regard to that evidence. So if I should overrule an objection don't consider that as part of evaluating the credibility or the believability of the witness and their evidence.

Now, you should understand that the law of the United States permits a United States district judge to comment to the jury on the evidence in a case, but such comments from the judge on the evidence are only expressions of the judge's opinions and the jury is free to disregard such comments in their entirety because, as I have told you, you, the jury, are the sole judges of the facts.  You are the sole judges of the credibility and believability of the witnesses, and you are the sole determiners of how much weight, if any, to be given to the evidence and testimony that will be presented during this trial.  So even though the law may permit me to make such comments, as I indicated to you earlier during jury selection, I am going to try very hard not to comment on the evidence, not to comment on any of the testimony, and avoid doing that.  Even so, you should not take into account anything you hear or see from me or you think you hear or see from me as something for you to consider in determining what the ultimate facts are in this case.

## JUROR NOTEBOOK AND NOTES

Our court reporter seated in front of me is taking down everything that is said in the courtroom, and that is why it is important that people talk one at a time during this trial.  Part of my job will be to make sure people only talk one at a time so it can be taken down accurately and we can have an accurate transcription of the record in this case.

However, that being said, you will not have a written version of the transcribed record.  You will not have a copy of everything that has been written down that was said in the trial for you to consider during your deliberations on your verdict.  That means you are going to have to rely on your memories of the evidence throughout the trial at the time that you retire to the jury room and deliberate on your verdict.  You are going to have to each rely on your own independent recollection of the evidence that has been presented.  To assist you in that regard, in a moment each of you are going to be given a juror notebook.  This notebook will have various materials in it that you will be

able to refer to when you deliberate on your verdict at the end of the trial. It will also have available spaces in it for you to take notes during the trial if you wish to.

It is up to each of you to decide if you want to take notes about the witnesses and their testimony or anything else. If you do, what kind of notes, how lengthy, how short, all of that is strictly up to you. But remember, if you elect to take notes during the trial, those notes are for your own personal use only. You still have to rely on your memory of the evidence and that is why you should be listening carefully and paying close attention to the testimony of each and every witness over the course of the trial. Also, you should not abandon your own recollection of the evidence because some other juror's notes indicate something differently. Notes, if you take them, are intended to refresh your recollection and that is the only reason you should be keeping them.

So, at this point, I am going to ask our Court Security Officer to pass out these juror notebooks to the members of the jury. In these notebooks you will see that you have a complete copy of each of the two Patents-in-Suit, the '931 Patent and the '794 Patent. You will also find in there a chart where the Court has already construed or interpreted some of the language from the asserted claims that come from the Patents-in-Suit. You will see the claim language on one column and you will see the corresponding construction or interpretation that the Court has already reached on the corresponding opposite side of the page, the other column. Again, you must apply my constructions to that claim language when deciding issues in this case including infringement.

You will also find in there a section of witness pages where you should have tabbed pages for each witness that may testify in this case, and on each of those pages there should be a head-and-shoulders photograph of the witness. That is so that, when you retire to the jury room, you will be able to look at a picture of the people that testified in hopes that it will help you refresh your recollection about what each of those people said.

The Court has often found jurors who tell me after trials that it is very helpful to see the pictures of the witnesses because there are going to be several witnesses over the course of the trial and this will help keep their testimony from each witness straight for your benefit. Below their pictures will be their names, and then the rest of those pages will each be ruled lines if you want to take notes there. You will also find behind those witness pages a new legal pad that you can also use for note-taking. There should also be a pen in the front of those notebooks for your use in case you do not already have a pen at your disposal.

These notebooks should be in your possession throughout the trial. At the end of the day, I will ask you to take them to the jury room and leave them closed on the jury table so that you will have them and be able to pick them up the next morning when you come back in. You are not to take them from the courthouse. But by the same token, you are supposed to keep them in your possession. They are not to be lying around where anybody can pick them up and see them.

That being said, there may be times during the course of the trial when we are going to take a short recess and I expect you to be out of the jury box for a short period of time. In those cases I may say you can simply close and leave your notebooks in your chairs, in which case you do not have to take them back to the jury room with you during those recesses. They will be closed and in your chairs when you come back in. But unless I give you specific instructions, they are to be in your possession at all times.

## OPENING STATEMENTS

Now, in a moment we are going to hear opening statements from the parties in this case, from General Access and then from the Defendant Verizon and Intervenor Ericsson. These opening statements are designed to give you a roadmap about what each side expects to offer by way of the evidence they intend to present over the course of the trial. You should remember, now and throughout the trial, that what the lawyers tell you is not evidence. It is the sworn testimony of the

witnesses from the witness stand and the documents that have been admitted after the Court has determined that they meet the admissibility requirements, the rules of evidence, and the other applicable rules.  Those are the evidence in this case.

But what the lawyers tell you is not evidence.  It is only their impression of what they believe the evidence will show, and they have a duty to point out to you what they believe the evidence is and what the evidence means.  But, remember, it is not their job to tell you what the evidence is.  You will hear that evidence from the sworn testimony of the witnesses and from the admitted exhibits that are presented over the course of the trial.  Those are the universe of the evidence in this case.

## PRESENTATION OF EVIDENCE AT TRIAL

After the opening statements are given by the parties, General Access will proceed to present its evidence and will call its witnesses.  As I mentioned, that is called the Plaintiff's case in chief.  Each of those witnesses will be subject to cross-examination by Defendant Verizon and/or Intervenor Ericsson.  When General Access has called all its witnesses, it will rest its case in chief.

Then Defendant Verizon and Intervenor Ericsson will present their case in chief in the same manner.  They will call their witnesses, those witnesses will be examined directly by Defendant Verizon's and/or Intervenor Ericsson's counsel, and then General Access's counsel will have an opportunity to cross-examine Defendant Verizon's and Intervenor Ericsson's witnesses.  When all Defendant Verizon's and Intervenor Ericsson's witnesses have been presented, Defendant Verizon and Intervenor Ericsson will rest their case in chief.

Once that is completed, if there are rebuttal witnesses from Plaintiff, General Access will then call and present them.  When that is done, all the evidence will be in. I will give you at that point my final instructions on the law called the Court's charge to the jury and the counsel for the competing parties will present their final closing arguments to you.

Then once you have heard those closing arguments from counsel, then I will direct you to retire to the jury room, to take the verdict form with you with those written questions contained in it, and to deliberate on your verdict and arrive at, as best you can, unanimous answers to those questions in the verdict form.  That is the structure of the trial.

## JURY CONDUCT

Let me remind you of my earlier instruction.  You are not to discuss the evidence in this case with anyone and you are not to discuss it among yourselves.  You are to discuss it among yourselves and you must discuss it among yourselves when all the evidence is in, when you have heard my final instructions and closing arguments from counsel, and I instruct you to retire to the jury room and to deliberate on your verdict.  That is the magic point in time where you go from not being able to discuss it among yourselves to being required to discuss it among yourselves as a part of the process of reaching unanimous agreement about how to answer the questions in the verdict form.

Let me also remind you from my earlier instructions, the parties, their counsel, the witnesses, the support staff, and everybody affiliated with one side or the other in this case, has been instructed by me not to communicate with you.  So if you see them in close proximity or pass by them on the front sidewalk or the steps or anywhere else, they are not going to speak, they are not going to be friendly, and they are not going to engage in conversation.  Do not hold that against them.  Do not think they are being rude.  Understand they are simply following the Court's instructions and doing what I require of them.

* * *

Now, with these instructions, we will proceed to hear opening statements from the attorneys in the case.  Plaintiff may present its opening statements.