IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| GENERAL ACCESS SOLUTIONS, LTD., § § *Plaintiff*, § § v. § § CELLCO PARTNERSHIP D/B/A § VERIZON WIRELESS *et al.*, § § *Defendants*. § § ERICSSON, INC., § § *Intervenor-Defendant*. § | CIVIL ACTION NO.  2:22-CV-00394-JRG |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendants Cellco Partnership d/b/a Verizon Wireless, Verizon Services Corp., Verizon Business Global LLC, Verizon Business Network Services LLC, Verizon Corporate Services Group Inc., Verizon Data Services LLC, and Verizon Online LLC's (collectively, "Verizon" or "Defendants") Rule 59 Motion for a New Trial ("the Motion"). (Dkt. No. 291.)  Having carefully considered the Motion, and for the reasons stated herein, the Court finds that the Motion should be and hereby is **GRANTED**.

I.     BACKGROUND

At trial, Plaintiff General Access Solutions, Ltd. ("Plaintiff") contended that Verizon infringed claims 28 and 29 of U.S. Patent No. 7,230,931 ("the '931 patent") and claims 1, 2, and 5 of U.S. Patent No. 9,426,794 ("the '794 patent"). (Dkt. No. 288; Dkt. No. 290.)  Verizon asserted that it did not infringe any of the asserted claims and that all asserted claims were invalid as lacking sufficient written description and enablement under 35 U.S.C. § 112. (*Id.*)  The jury found that

Verizon infringed all the asserted claims, that all the asserted claims were valid, and that Plaintiff was owed a lump-sum reasonable royalty of $847,000,000.00 for Verizon's infringement. (Dkt. No. 256.)

## II.     LEGAL STANDARD

Rule 59 provides that a new trial may be granted on all or part of the issues on which there has been a trial by jury for "any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). "A new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course." *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 612–13 (5th Cir. 1985); *see also Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003) ("A new trial is warranted if the evidence is against the great, and not merely the greater, weight of the evidence."). A new trial is appropriate if "the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable persons could not arrive at a contrary conclusion." *Dawson v. Wal-Mart Stores, Inc.*, 978 F.2d 205, 208 (5th Cir. 1992).

## III.    DISCUSSION

In the Motion, Defendants argue that a new trial is warranted for not only the reasons set forth in the Motion (Dkt. No. 291) but also for the reasons set forth in Defendants' co-pending Rule 50(b) Motions for Judgment as a Matter of Law regarding the '931 and '794 patents ("the JMOL Motions") (Dkt. No. 288; Dkt. No. 290). Accordingly, the Court considers each of the arguments in this Motion in combination with the arguments presented in the JMOL Motions.

A. The '931 Patent

1. "a broadcast beam signal to wireless access devices within more than one of said sectors"

As to the '931 patent, Verizon argues that no reasonable jury could have found the multi-sector broadcast beam signal limitation to be met. (Dkt. No. 288 at 6.) In particular, claims 28 and 29 of the '931 patent require that the base station's transmit path circuitry "transmit[], at a start of the TDD frame, a ***broadcast beam signal*** to wireless access devices within ***more than one of said sectors***." (*Id.* at 6 (emphasis in original).) Verizon argues that the unrebutted trial evidence establishes that the accused signals (SSBs) are never transmitted to wireless access devices within more than one sector. (*Id.* at 6-11 (identifying corroborating testimony from Verizon's fact and expert witnesses).) Verizon further points to testimony from Dr. Vijay Madisetti, Plaintiff's technical expert, who conceded that the SSB is sent "to each of the sectors through sector specific broadcast beams" and that the PSS (a component of the SSB) is "a sector specific part of SSB" that "identifies the particular sector." (*Id.* at 7, 9.) Dr. Madisetti further conceded that even common underlying information forming the SSB signals is scrambled in a different, sector-specific manner, resulting in a different signal for transmission. (*Id.* at 9-10.)

According to Verizon, Plaintiff then resorted to the theory that the different SSBs transmitted to each sector collectively satisfy the limitation requiring a broadcast beam signal that is transmitted to devices within more than one sector. (*Id.* at 11.) In particular, Dr. Madisetti argued that a collection of three different single-sector SSBs constitutes the claimed "broadcast beam signal." (*Id.* at 12.) Verizon argues that this theory impermissibly changes the meaning of

3

the claim language and eviscerates the sole limitation that allowed Plaintiff to overcome the prior art during prosecution.[1] (*Id.* at 11-13.)

Plaintiff also put forth the theory that the separate, distinct SSB signals nonetheless satisfied the claims because some information that went into creating those different signals was the same. (*Id.* at 14.) Verizon argues that the existence of common "underlying information" between sectors is not what the claims require, which is a "broadcast beam signal." (*Id.*) According to Verizon, Plaintiff improperly ignored the plain language of the claims by advancing an infringement theory that focused on information used much earlier in the process, before the generation of the signal that actually reaches the devices. (*Id.* at 15.)

### 2. "TDD frame" to multiple sectors

Verizon further argues that no reasonable jury could have found the limitation requiring one "TDD frame" to be transmitted to multiple sectors to be met. (*Id.* at 16-19.) The asserted claims of the '931 patent require a "TDD frame" that includes the first downlink data traffic to be transmitted to a first sector and, in the same downlink portion of the same TDD frame, a second downlink data traffic to be transmitted to a second sector. (*Id.* at 16.) According to Verizon, the undisputed evidence at trial established that neither a single TDD frame nor the downlink data traffic within a frame are ever sent to more than one sector. (*Id.* at 16-17.) Instead, each TDD frame serves only one sector. (*Id.* at 17.)

To overcome this disconnect between the claim language and the accused Verizon network, Dr. Madisetti improperly characterized the TDD frame as a "timetable," contrary to the plain meaning of "TDD frame" as reflected in the '931 patent—being a data structure with information

---

[1] Verizon argues that Plaintiff expressly added the "a broadcast beam signal to wireless access devices within more than one of said sectors" limitation during prosecution to overcome the prior art and gain issuance of the claims. (*Id.* at 11, 13.) According to Verizon, Dr. Madisetti's theory that multiple different SSB signals collectively satisfy "a broadcast beam signal" eviscerates this claim limitation. (*Id.*)

blocks that are transmitted and received. (*Id.* at 17-19.) Verizon argues that none of the evidence presented at trial supported Dr. Madisetti's improper assertion that the TDD frame is simply a timetable. (*Id.*)

### B. The '794 Patent

#### 1. "second transceiver monitors first signal characteristics of the second downlink signal"

As to the '794 Patent, Verizon argues that no reasonable jury could have found that the accused Verizon hotspots monitored any *downlink* signal. (Dkt. No. 290 at 4.) Claim 1 of the '794 Patent requires the second transceiver to "monitor first signal characteristics of the second *downlink* signal of the first mobile station." (*Id.* (emphasis in original).) According to Verizon, the sole testimony relied upon by Dr. Madisetti for this claim limitation concerned *uplink* signals from the mobile client devices, not downlink signals. (*Id.* at 5-6.) Indeed, Dr. Madisetti conceded this very point on cross examination and could not muster any evidence to the contrary apart from his own conclusory opinions. (*Id.* at 6-7 ("Q. And, in fact, the testimony that Mr. Gamboa gives, in particular, you are referring to the accused devices monitoring the *uplink* channel from the mobile station to the accused devices, aren't you, sir? A. Yes."; "A. [T]he *uplink* is measured for Mr. Youtz.").)

#### 2. "second transceiver . . . routes information to the first mobile station and the second mobile station, respectively"

Verizon further argues that no reasonable jury could have found that the second transceiver "routes information to the first mobile station and the second mobile station." (*Id.* at 7.) Under the Court's claim construction, "routing" requires "directing information through a specified path to the first mobile station and the second mobile station." (*Id.*) Verizon argues that the unrebutted evidence at trial established that the accused Verizon devices do not perform routing but rather perform omnidirectional transmission in all directions at once. (*Id.* at 9-10 (identifying

corroborating testimony from Verizon's expert witness).)  Verizon asserts that Dr. Madisetti supported his opinion with nothing more than demonstratives he created himself and testimony about "forwarding packets," which this Court has previously explained is not "routing."  (*Id.* at 8.)

Plaintiff advanced an additional theory with respect to a small portion of the accused Verizon devices: that "beamforming" is "routing."  (*Id.* at 10-11.)  Verizon observes that Dr. Jeffrey Andrews, Verizon's technical expert, provided unrebutted testimony that "beamforming" is "encoding the radio signal in a more concentrated direction," and that this Court has expressly ruled that "encoding" is not "routing."  (*Id.* at 11.)  Verizon also argues that it provided unrebutted evidence that beamforming does not create a path to a particular mobile station and is instead similar to omnidirectional transmission.  (*Id.*)

**C.    Analysis**

After careful consideration of Verizon's arguments and having presided over the entirety of the jury trial while seeing and hearing the same evidence and arguments as the jury, the Court ultimately concludes that the jury's verdict is against the great weight of the evidence to such a material degree that a new trial is necessary.  The Court is persuaded that the issues raised by Verizon are both substantial and fairly warrant a new trial on the entire case, including the issues of infringement, invalidity, and damages.  While this Court has great respect for a jury's considered verdict, the Court also recognizes its obligation to act where the verdict is against the great weight of the evidence, as is the case here.

**II. CONCLUSION**

For the foregoing reasons, the Court finds that Verizon's Motion for a New Trial (Dkt. No. 291) should be and hereby is **GRANTED**.  Accordingly, the verdict returned by the jury on June 28, 2024 is **VACATED** and **SET ASIDE**.  Further, the remaining post-trial motions filed herein (Dkt. No. 288; Dkt. No. 289; Dkt. No. 290; Dkt. No. 292) are **DENIED AS MOOT**.  The Court

**SETS** a new jury trial for 9:00 a.m. CT on **Friday, December 6, 2024**. The evidentiary rulings made by the Court during the May 28, 2024 Pre-Trial Conference and the June 26, 2024 jury trial shall apply to the new trial. This includes the pre-admission of all trial exhibits. The Court sees no need for an additional Pre-Trial Conference in advance of retrial.

**So ORDERED and SIGNED this 30th day of September, 2024.**

_____
RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE